RON CRAFT CHEVROLET, INC., Appellant,

v.

Paul DAVIS and Nita Davis, Appellees.

No. 08–91–00244–CV.

Court of Appeals of Texas, El Paso.

July 1, 1992.

Rehearing Overruled July 25, 1992.

**5.** 502 S.W.2d 903, 904 (Tex.App.—Waco 1973, writ ref'd n.r.e.).

Lennon C. Wright, Wright & Howerton, Houston, for appellant.

Ronald D. Haddox, Baytown, for appellees.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

LARSEN, Justice.

This appeal involves a judgment for actual and statutory damages under the Deceptive Trade Practices Act (DTPA), Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987 and Supp.1992). On February 20, 1985, Paul and Nita Davis purchased a used 1983 Chevrolet Suburban from Ron Craft Chevrolet (Ron Craft). As an integral part of the bargain, they also sought to purchase a 24 month, 24,000 mile (24/24) mechanical service agreement. They discovered in March 1985 that only a 12 month, 12,000 mile warranty had been issued for the Suburban. They requested that Ron Craft, through its finance manager Fred Zlomke, correct the mistake. Mr. Zlomke wrote a terse letter "[t]o whom it may concern," to the policy underwriter, Motor Insurance Corporation (MIC), but he never followed up on this, either with the policy underwriter or with the Davises.

Later, the car developed significant mechanical problems. Ron Craft initially represented to plaintiffs that their costs were covered, but sometime in August 1986 informed plaintiffs that it elected not to do anything further about the bills. The Davises at that point retained counsel. They filed suit against Ron Craft as sole defendant sometime later, but the record does not reflect the exact date.

The Davises obtained a jury verdict for actual damages in the amount of $3,941.89. The trial court remitted this amount to $3,559.09, as requested in plaintiffs' petition, and added $1,000 statutory damages under the DTPA. Defendant Ron Craft appeals.

### STATUTE OF LIMITATIONS

In Point of Error No. One, Ron Craft urges that the trial court erred in refusing to grant its motions for directed verdict and judgment *non obstante verdicto* because the statute of limitations barred the cause of action.

■ The statute of limitations is an affirmative defense. Ron Craft, therefore, bore the initial burden of pleading, proving and securing findings to sustain its plea of limitations. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988). Ron Craft properly pled statute of limitations but did not prove that more than two years elapsed between accrual of the Davises' cause of action and filing of suit. The record contains some evidence supporting Ron Craft's position that plaintiffs discovered on or about March 1, 1985, that the policy as issued was not the one for which they had bargained. There is no evidence, however, showing when plaintiffs' original petition was filed.[1] No testimony or documentary evidence before the trial court established the relevant date.

Moreover, in response to jury question number one, the jury found that Ron Craft had engaged in misleading or deceptive acts on or after November 20, 1985. This finding would establish that suit was timely, if filed by November 20, 1987. Because the record is silent as to when plaintiffs filed their original petition, Appellant has not met its burden of presenting a sufficient record on appeal to show reversible error. Tex.R.App.P. 50(d). Without an adequate record, this Court must presume there was additional evidence to support the trial court's implied finding that the statute of limitations defense was not established.

The defendant thus failed to meet its burden of proof in establishing a statute of limitations defense. Appellant's first point of error is overruled.

### JURY QUESTION NUMBER ONE

■ In Points of Error Nos. Two and Three, Ron Craft complains that the trial court erred in submitting jury question number one, because the question was not supported by pleadings, placed a nonexistent duty upon defendant and was not supported by legally or factually sufficient

1. Appellant's brief states that suit was filed on November 20, 1987, but no record cite supports this assertion.

evidence. Defendant Ron Craft properly preserved error on these points. Jury question number one and its response read:

> Do you find from a preponderance of the evidence, that on or after November 20, 1985, in the handling of the insurance policy in question and matters related thereto, RON CRAFT CHEVROLET, INC., its agents, servants or employees, made a false, misleading or deceptive statement or act to Plaintiffs, PAUL and NITA DAVIS?
>
> Answer "we do" or "we do not."
>
> Answer: *we do*

## PLEADINGS

Ron Craft initially argues that no pleadings supported the submission of jury question number one. Its only objection to submission of the question on that ground was:

> Comes now the Defendant, Ron Craft Chevrolet, who would also object to Question No. 1 for the reason there is [sic] no Pleadings to support the submission of that question.

The trial court overruled the objection, stating that the issue had been tried by consent. Defendant never objected to any evidence adduced at trial on the ground that it varied from the pleadings. Plaintiffs, on the other hand, never filed a trial amendment to conform their pleadings to the evidence presented at trial. Nevertheless, we find that defendant has waived error on this point.

 Initially, we are mindful that, in the absence of special exceptions, pleadings are to be liberally construed. *Lloyd's, U.S. Corporation v. Landis*, 777 S.W.2d 470, 473 (Tex.App.—El Paso 1989, writ denied). Where the question is whether plaintiffs have stated a cause of action, the trial court looks to the intent of the pleader and may uphold the pleading and the judgment rendered even if some element of the cause of action has not been specifically alleged. *Lloyd's*, 777 S.W.2d at 473. Here, we find there was adequate pleading, never subject

to special exception, to support the submission of issues and judgment. Specifically, plaintiffs' amended petition alleged:

> Defendant represented that Plaintiff's [sic] vehicle was insured by a Plan "C" 24/24 warranty. The representations were false, misleading and deeptive [sic], . . . . When Plaintiffs discovered this error in warranties and made Defendant aware of this descrepancy [sic], Defendant assured Plaintiffs that their vehicle would be insured by a Plan "C" 24/24 warranty from their date of purchase.

Defendant understood plaintiffs were accusing it of DTPA violations; the exact wording of the special issue on that point did not prejudice it.

 Furthermore, in lodging an objection that there is a variance between pleading and proof, "the distinct and specific variance or other defect must be stated in the objection or it is waived." *Brown v. American Transfer and Storage Company*, 601 S.W.2d 931, 938 (Tex.1980); *Hersh v. Hendley*, 626 S.W.2d 151, 156 (Tex. App.—Fort Worth 1981, no writ). Here, Appellant's objection to the submission of jury question number one was so general as to be almost meaningless. It in no way pointed out the distinct, specific variance of which defendant complained. This being so, the objection was waived.

## DUTY UNDER THE AGREEMENT

 Ron Craft next argues that MIC was solely responsible for payment of claims, and that Ron Craft, therefore, bore no culpability for any decision not to pay for repair work to the Davises' automobile.[2] The policy terms do not reflect this. Instead, the Automobile Mechanical Service Agreement indicates that:

> "WE," "US," and "OUR" mean *the dealer issuing the Agreement.* (The dealer is designated as Ron Craft Chevrolet). [Emphasis added].

· · · · ·

---

**2.** Nevertheless, Ron Craft Chevrolet never filed a cross-claim against MIC, which remains a

stranger to this lawsuit.

PROTECTION I—MECHANICAL BREAKDOWN

At *OUR* election *WE* will pay YOU or a repairer the COST to remedy any BREAKDOWN of a part covered by the Plan selected by YOU and shown in the Agreement Registration, less the DEDUCTIBLE. [Emphasis added].

. . . . .

1. APPRAISAL: If YOU do not agree with *US* on the amount of loss, either may demand an appraisal of the loss.

. . . . .

An appraisal shall not act as a waiver of *OUR* rights under this Agreement. [Emphasis added].

. . . . .

THE MECHANICAL SERVICE OBLIGATIONS OF THE *DEALER* UNDER THIS CONTRACT ARE COVERED BY A POLICY OF INSURANCE ISSUED BY THE CIM INSURANCE CORPORATION,.... IN THE EVENT THE *DEALER* CEASES TO DO BUSINESS, YOU MAY APPLY DIRECTLY TO CIM INSURANCE CORPORATION FOR THE MECHANICAL PROTECTION AFFORDED BY THIS CONTRACT. [Emphasis added].

Thus, the service agreement clearly contemplated that Ron Craft would be responsible for payment of claims, that Ron Craft would decide upon the amount to be paid in the event of a loss and that the consumer should contact the underlying insurer only if the dealer ceased doing business. Ron Craft cannot enter an agreement in which it obligated itself to make certain payments to the consumer, then argue when it refuses to pay that obligation that *it* was insured and, therefore, not liable for coverage of mechanical breakdown. Ron Craft sold the automobile, and as part of the bargain leading to the sale it executed the mechanical service agreement. It retained the prerogative of determining the amounts paid under the agreement, and clearly agreed that the dealer was the party who would pay either the consumer or the repairer (at the dealer's option) to remedy covered breakdowns.

■ Ron Craft urges that the jury question, as submitted, imposed upon it a duty of good faith and fair dealing which applies only to insurance carriers. This is a mischaracterization of the jury question, which imposes liability under a DTPA theory, not the duty of good faith and fair dealing. That it is worded in terms of an "insurance policy" does not change the theory of liability.

Thus, upon reading the clear, unambiguous provisions of the policy, Ron Craft's assertions that it had no duty to the Davises' because the agreement was an "insurance policy" must fail. Ron Craft undertook obligations which are clearly stated in the contract and upon which plaintiffs sued.

Question number one was supported by pleadings, and imposed upon Ron Craft only the lawful duty to refrain from false, misleading and deceptive practices. We overrule Points of Error Nos. Two and Three.

### REASONABLE AND NECESSARY REPAIRS

■ In Point of Error No. Four, Ron Craft urges that the evidence at trial was legally and factually insufficient to support the judgment because plaintiffs did not prove their repair bills were necessary and reasonable expenditures. Traditionally, the rule is that proof of reasonableness and necessity of repairs is required to recover damages for repair costs. *Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex.1985); *Gatx Tank Erection Corporation v. Tesoro Petroleum Corporation*, 693 S.W.2d 617 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). This traditional rule has recently been questioned in a DTPA context, however, and the Supreme Court has hinted that the DTPA may not require proof of reasonableness and necessity of repairs. *Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174, 175 (Tex.1988) (majority declined to consider correctness of such a requirement, while concurrence would hold that DTPA does not require such proof); *Carrow v. Bayliner Marine Corporation*, 781 S.W.2d 691, 693 (Tex.App.—Austin

1989, no writ); *Southwind Aviation, Inc. v. Avendano*, 776 S.W.2d 734, 736 (Tex. App.—Corpus Christi 1989, writ denied); *Corum Management Co., Inc. v. Aguayo Enterprises, Inc.*, 755 S.W.2d 895, 897–8 (Tex.App.—San Antonio 1988, writ denied). In this case, we need not address the issue of whether such proof is required under the DTPA, as we find the record adequate to support the jury's verdict on damages using the traditional standard.

To establish that repairs are recoverable, the magic words "reasonable" and "necessary" need not be used. Plaintiffs must only present sufficient evidence to justify the jury's finding that the repair costs were reasonable, and the repairs made were necessary. *Carrow*, 781 S.W.2d at 694; *Liptak v. Pensabene*, 736 S.W.2d 953, 958 (Tex.App.—Tyler 1987, no writ). Here, two of five repair invoices submitted to the jury were from defendant's own service department. Plaintiff Paul Davis testified that the bills presented in evidence were not all that he incurred, because sometimes the vehicle would be delivered without copies of invoices. Mr. Davis testified Ron Craft repaired leaks in the Suburban's rear main seals which a Baton Rouge mechanic, L & B Auto Repair, later overhauled because the Ron Craft service people had incorrectly installed the seals and they continued to leak. The Baton Rouge mechanic also repaired all the bearing caps, and the rear and front "mains" which repairs required dropping the engine. Plaintiff further testified that he called Ron Craft and spoke with Mr. Zlomke before authorizing any repairs in Baton Rouge. Mr. Zlomke approved the repairs, telling Mr. Davis "if the [mechanic] is certified, have it fixed." He also instructed plaintiff Davis to bring the bill to Ron Craft, and Zlomke would process it. Only then did Davis authorize the work. Zlomke did not dispute this testimony.

Mr. Davis took the L & B invoice to Ron Craft personally, along with the old bearings which had been replaced in Baton Rouge.

In December 1985, the Suburban's central air conditioning and transmission went out. Mr. Davis described this as "the transmission blew all the oil out of it and was not driving well anymore." This breakdown necessitated towing and dropping the transmission, as reflected in a bill from Bunyard's Garage. Its other problems included fuel injector malfunctions, leaking seals and a loss of power, for all of which the Davises took the Suburban to Ron Craft for repair.

Plaintiffs' evidence on damages was uncontroverted. Under these circumstances, plaintiffs adequately established the reasonableness and necessity of repairs, particularly because Ron Craft's manager, Mr. Zlomke, authorized repairs by a certified Baton Rouge mechanic before work began, and because defendant itself performed many of the repairs. We overrule Point of Error No. Four.

## CONCLUSION

The judgment of the trial court is affirmed.