**MERCHANTS FAST MOTOR LINES, INC., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–95–224–CV.**

Court of Appeals of Texas, Waco.

March 13, 1996.

Rehearing Overruled April 3, 1996.

Arlen D. Bynum, Dallas, for Appellant.

Dan Morales, Attorney General of Texas, Jorge Vega, First Assistant Attorney General, Laquita A. Hamilton, Deputy Attorney General for Litigation, David A. Talbot, Jr., Asst. Attorney General, Chief, Transportation Division, Phillip F. Arrien, II, Asst. Attorney General, Transportation Division, for appellee.

Before CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

This case involves a one-vehicle, one-fatality accident. The State of Texas ("State") sued the deceased driver's employer, Merchants Fast Motor Lines, Inc. ("Merchants"), for negligent damage to state-owed property, *i.e.*, guardrails and a "full-span sign bridge." The court instructed the jury on the doctrine of *res ipsa loquitur.* The jury found the driver was negligent and awarded the State damages and attorney's fees. Merchants brings nine points of error, asserting that the evidence is legally and factually insufficient to support the jury's negligence finding. Specifically, it complains of the court's instruction on *res ipsa.* Merchants also complains of the sufficiency of the evidence to support the damages finding and attacks the award of attorney's fees. Because (1) the court properly instructed the jury on *res ipsa,* (2) the evidence supports the jury's findings, and (3) the State is entitled to attorney's fees, we will affirm the judgment.

On February 24, 1992, William Keith, an employee of Merchants, was driving a Merchants' tractor-trailer rig northbound on Interstate 45, south of Corsicana. In the early morning hours, around 4 a.m., Keith's vehicle left the roadway and entered the grassy median between the north- and southbound lanes. The vehicle struck a guardrail and continued travelling until it collided with a pole supporting an overhead sign which spanned the southbound lane. Keith was pronounced dead at the scene. There were no eyewitnesses to the accident.

The State brought a negligence action against Merchants for the damage done to state-owned highway property. Merchants moved for a directed verdict after the State presented its evidence. After the court over-

ruled the motion, Merchants rested without presenting any evidence. Over Merchants' objection, the court charged the jury on negligence and submitted a *res ipsa loquitur* instruction. The jury found Keith negligent, and it awarded the State $50,213.49 in damages and $10,000 in attorney's fees. The court overruled Merchants' motions for a judgment n.o.v. and for a new trial.

In its first seven points, Merchants complains that: the evidence is legally and factually insufficient to support the jury's finding of negligence; the court erred in overruling its motions for a directed verdict, for a judgment n.o.v., and for a new trial; and the court erred in instructing the jury on *res ipsa loquitur.*

■ All seven points are "no evidence" or "insufficient evidence" challenges to issues on which the State had the burden of proof. Thus, in determining the "no evidence" points, we look only to the evidence and reasonable inferences which tend to support the jury's findings, disregarding all evidence and inferences to the contrary. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). If there is more than a scintilla of evidence to support a finding, the no-evidence challenge fails. *Id.* In determining the "insufficient evidence" points, we review all of the evidence, both for and against the findings, and set aside a finding only if the evidence demonstrates that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

The State alleged six specific acts of negligence and *res ipsa loquitur* in its Third Amended Petition. The court's charge, however, instructed the jury only on *res ipsa* without reference to the specific acts of negligence. On appeal, the parties limit themselves to arguing about the applicability of *res ipsa.* The threshold question is whether the theory of *res ipsa loquitur* is proper in this case. We first look to whether *any* evidence supports the submission of the *res ipsa* instruction. *Browning–Ferris,* 865 S.W.2d at 928. If so, we must determine whether the jury's finding of negligence is

clearly wrong and unjust. *Cain,* 709 S.W.2d at 176.

## RES IPSA LOQUITUR

■ *Res ipsa loquitur* is a rule of evidence which allows a jury to infer negligence. *Jones v. Tarrant Utility Co.,* 638 S.W.2d 862, 865 (Tex.1982). "The purpose of *res ipsa* is to relieve the plaintiff of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident." *Id.; Mobil Chemical Co. v. Bell,* 517 S.W.2d 245, 251 (Tex.1974).

■ The doctrine of *res ipsa* is applicable only when: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to be under the management and control of the defendant. *Jones,* 638 S.W.2d at 865. Merchants does not challenge the second element. It argues that there is no evidence or insufficient evidence of the first element— that the character of the accident is such that it would not ordinarily have occurred in the absence of negligence.

## THE EVIDENCE

There were no eyewitnesses to the accident. Reese Morgan, a sergeant with the Texas Department of Public Safety, investigated the accident. When he arrived on the scene, he determined that a northbound tractor-trailer had "run off the road" into the median, struck a guardrail, "slid down" the guardrail, rolled onto its side, and struck the support post of an overhead sign spanning the southbound lane of Interstate 45. Morgan investigated the tire marks in the median and determined that the driver had driven straight off the roadway and through the grass without engaging the brakes.

Morgan testified that, prior to the accident, the truck had been traveling in the outside northbound lane of the "Richland Curve." He stated that there were no skid or yaw marks from the truck, that the truck "just appeared to straighten out the curve more or less," and that it did not appear the

driver had taken evasive action to avoid the accident. Morgan did not find evidence of excessive speed or evidence that the truck had struck or been struck by anything prior to leaving the roadway.

Based on the physical evidence and his experience and training as an accident investigator, Morgan believed that—due to the lack of evasive action to avoid the accident—Keith "probably fell asleep or possibly could have had a severe heart attack and just ran off the roadway." Because it was a one-fatality accident involving no criminal charges, no autopsy was performed on Keith's body. A blood test was performed; however, no alcohol or drugs were detected.

Morgan testified that the weather was "dark and cool," the roadway was dry, and the road surface was in good condition. He testified that the accident was unusual because "someone who's conscious and awake" would take some type of evasive action. Morgan found nothing "irregular" in Keith's driver's log to indicate that he was overly fatigued. The logs showed that Keith had left Houston about midnight.

## APPLICABILITY OF RES IPSA

■ Merchants cites *Cudworth v. South Texas Paisano Constr. Co.*, 705 S.W.2d 315 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). In *Cudworth*, a tractor-trailer was being driven on the shoulder of a highway overpass. The truck climbed the guardrail, fell onto the train tracks below, and was struck by a train. The truck's driver died. The rail company and its employees sued the driver's employer on theories of negligence, negligence *per se*, and *res ipsa loquitur.* The jury failed to find that driving the truck on the shoulder of the overpass was a negligent act. *Id.* at 316. The opinion is unclear about whether the jury was actually charged on *res ipsa.*

The plaintiffs argued that the jury's failure to find negligence was against the great weight and preponderance of the evidence. *Id.* at 317. The testimony from an accident reconstruction expert was conflicting. He testified that marks on the truck's tires led him to conclude that the truck had been struck by another vehicle shortly before the accident. However, he admitted that the prior contact could have been up to four hours before the truck fell on the train tracks. There was no evidence that the truck driver had lost control of the vehicle, and the expert's testimony on possible brake or steering failure was inconclusive. *Id.*

Determining that "the cause of the accident rests in mere conjecture," the court held that the doctrine of *res ipsa loquitur* does not apply when "all facts connected with the occurrence fail to point to any particular cause of the injury, but merely show a state of affairs from which an inference could reasonably be drawn that the injury was due to some cause other than the negligence of the defendant." *Id.* at 317–18. The court overruled the plaintiffs' point that the preponderance of the evidence established the truck driver's negligence. *Id.* at 318.

In *Cudworth*, the jury had evidence of various possible causes of the accident. First, the jury found that the truck was being driven on the shoulder of the road, although it failed to find negligence. *Id.* at 316. Second, there was some evidence that the truck had been involved in an accident shortly before it fell from the overpass. *Id.* at 317. There was no evidence that the driver had lost control of the truck. Finally, there was inconclusive testimony regarding braking or steering mechanism failure. *Id.* Given the evidence, the appellate court declined to overturn the jury's failure to find negligence.

The State cites *Porterfield v. Brinegar*, 719 S.W.2d 558 (Tex.1986). In *Porterfield*, a driver and passenger were returning home at 3:30 a.m. from a night of dancing when the car left the roadway. The passenger was asleep before the accident, the driver was killed on impact, and there were no other eyewitnesses. The passenger, who was seriously injured, sued the estate of the driver for negligence.

The investigating officer testified that there were no skid marks to indicate that the driver had applied the brakes, the car had travelled approximately 100 feet after leaving the roadway, and there was no indication that the vehicle had made contact with any other object. *Id.* Evidence showed that the

driver had been awake since 5:30 a.m. the previous morning, that he was in excellent health, and that he was familiar with the road. *Id.* at 559. Furthermore, the plaintiff-passenger had driven the automobile before and it had functioned properly. *Id.*

The trial court granted an instructed verdict. *Id.* at 558. The court of appeals reversed.[1] *Id.* The Supreme Court, looking at the evidence in the light most favorable to the party against whom the verdict was directed, determined that the passenger had presented some evidence of both elements of *res ipsa. Id.* at 559–60. Regarding the application of *res ipsa*, the Court quoted with approval from an opinion of the Supreme Court of North Carolina:

> ... It is unusual for an automobile to leave the highway. When it does so without apparent cause and inflicts the injury or damage, an inference of the driver's actionable negligence arises, which will take the case to the jury. The inference of negligence does not arise from the mere fact of injury; it arises from the manner in which it occurred.

*Id.* at 560 (quoting *Greene v. Nichols*, 274 N.C. 18, 161 S.E.2d 521, 527 (1968)). The Court affirmed the judgment of the court of appeals and remanded the cause for trial.

We believe the present facts more akin to *Porterfield* than *Cudworth.* The jury heard evidence that Keith's tractor-trailer "straighten[ed] out the curve" without taking evasive action to avoid the accident. The road and weather conditions were good. There was no indication that the truck had been hit or damaged prior to leaving the roadway. "It is unusual for a [tractor-trailer] to leave the highway." *Id.* It is especially unusual for a tractor-trailer to leave the highway without applying the brakes, with no indication of an intervening accident or cause, at 4 a.m. on a clear morning. Viewing only the evidence and reasonable inferences which tend to support the court's submission of *res ipsa* and disregarding all evidence and inferences to the contrary, we believe the

State presented some evidence that the character of the accident is such that it would not ordinarily occur in the absence of negligence. *Browning–Ferris, Inc.*, 865 S.W.2d at 928; *Jones*, 638 S.W.2d at 865. Thus, the trial court correctly submitted the *res ipsa* instruction to allow the jury to infer Keith's negligence. *Porterfield*, 719 S.W.2d at 560. Merchants' no-evidence points cannot be sustained.

We next look at all of the evidence in the record to determine Merchants' factual-sufficiency challenges.

■ There was no direct evidence of an apparent cause for Keith's vehicle to leave the highway. We borrow from the *Greene* opinion: "When a motor vehicle leaves the highway for no apparent cause, it is not for the court to imagine possible explanations. Prima facie, it may accept the normal and probable one of driver-negligence and leave it to the jury to determine the true cause after considering all the evidence—that of defendant as well as plaintiff." *Greene*, 161 S.E.2d at 527.

■ Trooper Morgan's belief that Keith "probably fell asleep or possibly could have had a severe heart attack" does not preclude *res ipsa.* As stated previously, "The purpose of *res ipsa* is to relieve the plaintiff of the burden of proving a specific act of negligence when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident." *Jones*, 638 S.W.2d at 865. "[T]he possibility of other causes does not have to be completely eliminated but their likelihood must be so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door." *Porterfield*, 719 S.W.2d at 559.

When we consider all of the evidence, we cannot say that the jury's determination was so against the great weight and preponder-

---

1. *Brinegar v. Porterfield*, 705 S.W.2d 236 (Tex. App.—Texarkana 1986), *aff'd*, 719 S.W.2d 558 (Tex.1986). The Texarkana Court's opinion reviews cases from other jurisdictions in which the doctrine of *res ipsa loquitur* was held to apply in similar fact situations. *Brinegar*, 705 S.W.2d at 239–41.

ance of the evidence as to be clearly wrong and unjust. *Cain,* 709 S.W.2d at 176.

We overrule points one through seven.

DAMAGES

■ Merchants' eighth point asserts that the jury's finding of damages is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. It argues that the State failed to prove that the charges for repair and replacement were reasonable and necessary.

Photographs were introduced showing the damage to the guardrail. Other photographs show that the truck's impact with the overhead sign support severely damaged the truck's cab. Raymond Lewis, a maintenance supervisor with the Texas Department of Transportation, testified that several feet of the guardrail had been destroyed and were repaired. He testified to the damage to the post supporting the overhead sign. Lewis testified that, given the damage and the safety concern that the sign might fall on southbound traffic, the decision was made to take the sign down.

Melanie Young, an engineer with the Texas Department of Transportation, testified that the damage to the sign indicated it should be replaced. She described the process by which the Department determines what type of replacement sign to use and where to locate it on the highway. Young testified that, once a design is completed, the Department conducts a state-wide bidding process. She stated that the damaged "full span structure" or "two support pole sign bridge" was replaced with a cantilever support sign. She also testified that a full span sign like the one damaged would have cost ten to eleven thousand dollars more than the estimate for the cantilever sign.

Joe Nelson, a deputy district engineer with the Texas Department of Transportation, testified that the damage to the overhead sign structure was significant and that there was concern about its structural integrity. He concurred in the decision to remove and replace the structure. Nelson testified that his duties include reviewing proposed structure designs, concurring that the estimated cost is reasonable, and occasionally participating in the award of the contract. He testified that the crane services required to remove the overhead structure were put out for bid.

Nelson testified that the various charges—including labor, equipment rental, materials and supplies, actual cost of the sign, indirect costs for contract management and administration—were "typical" of a project of this type. He testified that there was nothing unusual about any of the particular charges. Nelson itemized the costs incurred in several categories and said that the figures were not "out of line" for the work done on the project.

■ To recover the cost of repair or replacement, a plaintiff must show that the cost of repair or replacement was reasonable and necessary. *Pena v. Ludwig,* 766 S.W.2d 298, 304 (Tex.App.—Waco 1989, no writ). "Reasonable" and "necessary" are not "magic words" that a witness must incant. *Ron Craft Chevrolet, Inc. v. Davis,* 836 S.W.2d 672, 677 (Tex.App.—El Paso 1992, writ ·denied); *Carrow v. Bayliner Marine Corp.,* 781 S.W.2d 691, 694 (Tex.App.—Austin 1989, no writ). The plaintiff must present sufficient evidence to justify the jury's finding that the costs of repair or replacement were reasonable and necessary. *Ron Craft Chevrolet,* 836 S.W.2d at 677.

The evidence shows that portions of the guardrail were destroyed and were repaired. Testimony showed that one of the supports and the truss to the overhead sign were significantly damaged and that safety reasons dictated replacement of the sign. Many of the costs were put out for bid. Based on his experience and knowledge, Nelson testified that the costs were "typical" of this type of project and were not "out of line." We believe the evidence was sufficient to allow the jury to find that the costs of repair and replacement were reasonable and necessary. *Id.* We overrule point eight.

ATTORNEY'S FEES

■ In its ninth point, Merchants' asserts that the court erred in awarding attorney's fees because (1) the State is not entitled to attorney fees and (2) the State did not comply with the "presentment" requirements

of Chapter 38 of the Civil Practice & Remedies Code. TEX.CIV.PRAC. & REM.CODE ANN. §§ 38.001–.006 (Vernon 1986).

The State agrees that, as a general rule, a litigant is not entitled to recover attorney's fees absent a statute or contractual agreement between the parties. *See New Amsterdam Casualty Co. v. Texas Indust., Inc.,* 414 S.W.2d 914, 915 (Tex.1967). The State also agrees that "presentment" is a prerequisite to recovering attorney's fees for claims listed in section 38.001 of the Civil Practice and Remedies Code. TEX.CIV.PRAC. & REM.CODE ANN. §§ 38.001–.002. However, the State relies on section 402.006(c) of the Government Code which states: "In a case where the state is entitled to recover a penalty or damages the attorney general is entitled, on behalf of the state, to reasonable attorney's fees and the court costs." TEX.GOV'T CODE ANN. § 402.006(c) (Vernon 1990).

Various statutes provide for the recovery of attorney's fees. *Id.;* TEX.CIV. PRAC. & REM.CODE ANN. §§ 37.009, 38.001–.002 (Vernon 1990); TEX.BUS. & COM.CODE ANN. § 17.50(d) (Vernon Supp.1996). The wording of the various statutes differs, as do the reasons for their enactment. *See McKinley v. Drozd,* 685 S.W.2d 7, 9 (Tex. 1985). Thus, in determining whether attorney's fees are recoverable under one statute, the construction of another attorney's fees statute is not controlling. *Id.* (recovery of attorney's fees under the DTPA not controlled by construction of predecessor statute of section 38.001). Section 402.006(c) provides for recovery of attorney's fees when the State recovers a penalty or damages. TEX. GOV'T CODE ANN. § 402.006(c). Looking at the plain language of the statute, we believe that the legislature provided for the recovery of attorney's fees any time the State recovers a penalty or tort damages. *Id.* The statute does not require "presentment" as a prerequisite to recovery. *Id.* The State recovered tort damages from Merchants and, by statute, is entitled to the attorney's fees the jury awarded. We overrule point nine.

We affirm the judgment.