Opinion issued April 16, 2009














     





In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00599-CV




PINOLE VALLEY TRUCKING, INC., Appellant

V.

THE TEXAS DEVELOPMENT COMPANY, AS LEASING AGENT FOR
529 #3, LTD., Appellee



On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2007-06846
 

 

 
 
 
MEMORANDUM OPINION
          Appellee, The Texas Development Company, as Leasing Agent for 529 #3,
Ltd. (“Texas Development”), sued appellant, Pinole Valley Trucking, Inc. (“PVT”),
for damages and holdover rent relating to property leased by PVT from Texas
Development. Counsel for PVT did not appear at trial. After hearing Texas
Development’s evidence, the trial court rendered judgment for Texas Development.
          In two points of error, PVT contends that the trial court erred in rendering
judgment for Texas Development and in allowing PVT’s motion for new trial to be
overruled by operation of law. We affirm.Background
          PVT began leasing office and warehouse space from Texas Development in
March of 2003. After several amendments by the parties, the lease terminated on
December 31, 2006. Texas Development sued PVT for damages, holdover rent, and
attorney’s fees on February 6, 2007, alleging that PVT had “failed to vacate the
Premises” upon termination of the lease and caused “substantial damage” to the
property. PVT answered with a general denial.
          After a protracted discovery dispute, the case was tried to the bench on April
1, 2008. Counsel for PVT did not appear at trial. Texas Development called Stephen
Marmion, a leasing agent and property manager for the company, who summarized
the property damage for which Texas Development sued PVT. Marmion testified that
he had worked for Texas Development for 17 years and that his duties were to
“manage and lease industrial buildings and collect the rent and prepare buildings
ready [sic] for the next tenant.” Through Marmion, Texas Development introduced
the lease, an unpaid water bill, and an itemized description—including photographs
and repair costs—of the damage into evidence. Marmion then testified as follows:
Q: All right. And did you personally see this building at the time Pinole Valley
Trucking originally leased the building?

          A: Yes, I did.
          Q: Were any of those damages in place at that time?
          A: No. 
Q: And did you personally inspect the building after Pinole Valley Trucking
left?

          A: Yes, I did.
Q: And were these the damages to that building?
          A: Yes, they are.
Q: Next, what is the—are you familiar with the standard hourly rate for repairs
for the metal buildings such as the damages there to the metal building, the
office, the parking lot and the other items that are reflected in those
photographs and that summary?

          A: Yes, I am.
Q: And what is the standard hourly rate for the employees that do that work in
Harris County?

          A: Today it’s $50. At that time I believe it was $48.
          Marmion also testified that the lease permitted Texas Development to charge
rent at twice the normal monthly rate for holdover tenancy and that PVT had triggered
the holdover provision:
          Q: And does—and when did they surrender the premises?
A: They never really completely cleaned up the premises. They surrendered it
one month late.

          . . .
 
Q: Does paragraph 5.03 of the lease provide that any event [sic] that the tenant
remains in possession of the premises or doesn’t clean up the premises to the
proper condition at the termination date of the lease that the tenant will be
deemed to be occupying the premises as a tenant from month-to-month except
that the monthly rent for each hold over rent or partial month shall be twice the
full monthly rent?

          A: That’s correct.
          . . .
Q: Did Pinole Valley Trucking have all their goods removed? Did they vacate
the premises pursuant to the lease on December 31st?

          A: No, they did not.
          Q: Did they hold over to January or part of the month of January?
          A: Yes.
          Q: Could you tell the Court approximately how many days they held over?
A: Approximately, three weeks but since a number of things weren’t
done—damages weren’t repaired, there were truck tires there, there were
dumpsters there, actually they were there beyond the month of January 31.

          On April 24, 2008, the trial court rendered judgment in favor of Texas
Development. PVT filed a motion for new trial on May 27, 2008, arguing that its
nonappearance was not intentional or the result of conscious indifference because
PVT’s counsel “was unaware that the trial was being conducted on April 1, 2008.”
Counsel for PVT admitted that he was aware that the case was on the March 31, 2008,
two-week trial docket but argued that his nonappearance was excused because “the
case was the 17th jury trial on the docket” and “[d]efense counsel was advised by the
Court that the case may be reached the second week of the two week docket.” In an
affidavit attached to the motion, he averred that he had “received no prior notice that
the trial of this case was to take place on the morning of April 1, 2008.”
          In its response to PVT’s motion for new trial, Texas Development contested
PVT’s counsel’s claim that he had not received prior notice, stating that, “[w]hen the
court coordinator notified [counsel for Texas Development] to report for trial on April
1, 2008, the court coordinator told [counsel for Texas Development] that she had
placed several calls to [counsel for PVT]; however, he had not returned her calls.” 
          PVT’s motion for new trial was overruled by operation of law on July 8, 2008.
Rendition of Judgment
          In its first point of error, PVT argues that the trial court erred by rendering
judgment for Texas Development. Specifically, PVT argues that Texas Development
failed to present competent evidence that the damage at issue occurred during the
lease and that PVT held over. PVT further argues that the “amounts” sought by Texas
Development “are not supported as reasonable charges in the Harris County, Texas
area but are unnecessary and are unreasonably high.”
Damages to Property and Holdover
          PVT contends that the evidence presented by Texas Development was not
competent because there was no evidence that “the sole witness [Marmion] had
personal knowledge” of the damage to the leasehold or of PVT’s holdover. Because
PVT was not present at trial to make objections regarding the admissibility of Texas
Development’s evidence and thus waived any such objections, we read PVT’s point
of error as a challenge to the legal and factual sufficiency of the evidence supporting
the trial court’s judgment.
          Standard of Review
          Unlike a no-answer default judgment, in which the defendant does not file an
answer, a post-answer default judgment, in which the defendant answers but fails to
appear for trial, “constitutes neither an abandonment of defendant’s answer nor an
implied confession of any issues thus joined by the defendant’s answer.” Stoner v.
Thompson, 578 S.W.2d 679, 682 (Tex. 1979). Hence, Texas Development was
required to carry its burden of proof and “offer evidence and prove [its] case as in a
judgment upon a trial.” Id. 
          When a party without the burden of proof, such as PVT, challenges the legal
sufficiency of the evidence, we consider all of the evidence in the light most
favorable to the prevailing party, indulging every reasonable inference in that party’s
favor. Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86
(Tex. 1998); Ned v. E.J. Turner & Co., 11 S.W.3d 407, 408 (Tex. App.—Houston [1st
Dist.] 2000, pet. denied). If there is more than a scintilla of evidence to support the
challenged finding, we must uphold it. Formosa Plastics Corp. USA v. Presidio
Eng’rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998). When the evidence
offered to prove a vital fact is so weak as to do no more than create a mere surmise
or suspicion of its existence, the evidence is no more than a scintilla and, in legal
effect, is no evidence. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004)
(quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). However, if the
evidence supplies some reasonable basis for differing conclusions by reasonable
minds as to the existence of a vital fact, then there is legally sufficient evidence. King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). The traditional scope of
review does not disregard contrary evidence if there is no favorable evidence, or if
contrary evidence renders supporting evidence incompetent or conclusively
establishes the opposite. City of Keller v. Wilson, 168 S.W.3d 802, 810-11 (Tex.
2005). Evidence can be disregarded whenever reasonable jurors could do so, an
inquiry that is necessarily fact-specific. Id. 
          When reviewing a factual sufficiency challenge, we examine, consider, and
weigh all of the evidence, setting aside the verdict only if the evidence is so weak or
the finding is so against the great weight and preponderance of the evidence that it
is clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Otis
Elevator Co. v. Joseph, 749 S.W.2d 920, 923 (Tex. App.—Houston [1st Dist.] 1988,
no writ). Because the trier of fact is the sole judge of the credibility of the witnesses
and the weight to be given their testimony, in conducting a factual sufficiency review,
we may not substitute our opinion for that of the trier of fact merely because we might
have reached a different fact conclusion. Herbert v. Herbert, 754 S.W.2d 141, 144
(Tex. 1988); Rego Co. v. Brannon, 682 S.W.2d 677, 680 (Tex. App.—Houston [1st
Dist.] 1984, writ ref’d n.r.e.).
          The Evidence
          Marmion testified that he inspected the property both at the time PVT
originally leased it and after PVT left and that the property damage occurred in the
interim. Texas Development also introduced photographs of the damage and an
itemized summary of the repair costs. 
          Additionally, Marmion testified that PVT had triggered the holdover provision
in the lease by not surrendering the premises on time, by not repairing the damage,
and by leaving truck tires and dumpsters on the property. The lease, which was
introduced into evidence, required PVT, on the last day of the lease term, to
“peaceably surrender the Premises in good condition and repair consistent with
Tenant’s duty to make repairs as herein provided” and “remove all of its property and
trade fixtures and equipment from the Premises. . . .” The holdover provision
permitted Texas Development to recover holdover rent as well as all costs “arising
out of loss or liability resulting from delay by Tenant in so surrendering the Premises
as provided in this Lease . . . .”
          We conclude that the evidence creates far more than a mere surmise or
suspicion that PVT damaged the property during its tenancy and triggered the
holdover provision. Accordingly, we hold that the evidence is legally sufficient to
support the trial court’s findings in favor of Texas Development. See Ridgway, 135
S.W.3d at 601. Further, giving due deference to the trial court’s determination of
Marmion’s credibility, we conclude that the evidence is not so weak as to render the
trial court’s findings clearly wrong or unjust and accordingly hold that the evidence
supporting those findings is factually sufficient. See Cain, 709 S.W.2d at 176;
Herbert, 754 S.W.2d at 144.
“Amounts”
          PVT also complains that the “amounts” sought by Texas Development “are not
supported as reasonable charges in the Harris County, Texas area but are unnecessary
and are unreasonably high.”
          Repair Costs
          Generally, proof of reasonableness and necessity of repairs is required to
recover damages for repair costs. Ron Craft Chevrolet, Inc. v. Davis, 836 S.W.2d 672,
676 (Tex. App.—El Paso 1992, writ denied). The words “reasonable” and
“necessary” need not be used to establish that repairs are recoverable. Id. at 677. A
plaintiff must only present sufficient evidence to justify a fact finding that the repair
costs were reasonable and the repairs made were necessary. Id. 
          The Evidence
          Here, Texas Development introduced an exhaustive itemized summary of the
damages into evidence. The summary contains a description and a repair cost figure,
which is divided into material and labor components, for each item of damages and
includes 86 photographs. Additionally, Marmion, who testified that he has held a
commercial real estate license since 1971, discussed the damage and the repair costs
and testified as to the standard hourly rate for such repairs in Harris County.
          We conclude that Texas Development introduced sufficient evidence to justify
the trial court’s finding that the repair costs were reasonable and the repairs made
were necessary. Id.
Conclusion
          We hold that the evidence is legally and factually sufficient to support the trial
court’s judgment and overrule appellant’s first point of error. 
Motion for New Trial
          In its second point of error, PVT contends that the trial court erred in allowing
PVT’s motion for new trial to be overruled by operation of law.
Standard of Review
          To set aside a post-answer default judgment, a party must show (1) its failure
to appear at trial was not intentional or the result of conscious indifference, but was
due to mistake or accident; (2) there exists a meritorious defense to the suit; and (3)
granting the motion will not delay or otherwise work an injury to the other party.
Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939). A
trial court abuses its discretion if it denies a motion for new trial when the defendant
satisfies the Craddock standard. Old Republic Ins. Co. v. Scott, 873 S.W.2d 381, 382
(Tex. 1994).
Conscious Indifference
          In an affidavit attached to his motion for new trial, counsel for PVT explained
that he was aware that the case was on the March 31, 2008, two-week trial docket but
“was advised by the Court that the case may be reached for trial the second week of
the trial docket” and “received no prior notice that the trial of this case was to take
place on the morning of April 1, 2008.” Texas Development contested the
mistake/conscious indifference element of the Craddock test in its response.
Failure to Request Hearing
          The record reflects no attempt by PVT to obtain a hearing on its motion for
new trial. If a party contests the mistake/conscious indifference element of the
Craddock test, an evidentiary hearing with live witnesses is ordinarily required. Puri
v. Mansukhani, 973 S.W.2d 701, 715 (Tex. App.—Houston [14th Dist.] 1998, no
pet.) (citing Estate of Pollack v. McMurrey, 858 S.W.2d 388, 392 (Tex. 1993)). In
Puri, when deciding a case involving a no-answer default judgment, the Fourteenth
Court of Appeals held that no abuse of discretion occurred “[b]ecause [the defaulting
defendant] failed to request a hearing on the contested issue of conscious indifference
and allowed the motion [for new trial] to be overruled by operation of law.” Puri, 973
S.W.2d at 715. In making the same holding in a post-answer default judgment case,
the Fifth Court of Appeals explained:
[W]hen a motion for new trial requires the exercise of discretion, the judge
must have an opportunity to exercise his discretion before that discretion can
be abused. An abuse of discretion may occur if the defendant, though diligent,
is unable to obtain a hearing within the time allowed by the rules or if, after
hearing the motion, the judge fails to rule on the motion within that time. 
However, we hold that where, as here, the record fails to show any attempt to
obtain a timely hearing, no abuse of discretion is shown.
Shamrock Roofing Supply, Inc. v. Mercantile National Bank, 703 S.W.2d 356, 358
(Tex. App.—Dallas 1985, no writ).

          We agree with the reasoning of Puri and Shamrock. Accordingly, we hold that
the trial court did not abuse its discretion in allowing PVT’s motion for new trial to
be overruled by operation of law and overrule PVT’s second point of error.Conclusion
          We affirm the judgment of the trial court.

  
                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Hanks.