**Dr. George N. STOKES, Appellant,**

v.

**Lauri PUCKETT, Deann Carlton, and Cheryl Shirley, Appellees.**

**No. 09–97–070 CV.**

Court of Appeals of Texas, Beaumont.

Submitted June 11, 1998.

Decided Aug. 27, 1998.

 

**OPINION**

BURGESS, Justice.

Lauri Puckett, DeAnn Carlton and Cheryl Shirley (appellees) brought suit against Dr. George N. Stokes for assault and intentional infliction of emotional distress. A jury awarded them actual and punitive damages. Stokes appeals bringing eight points of error. Appellees bring three cross points.

In his first point of error, Stokes alleges the trial court erred in denying his motion for judgment notwithstanding the verdict because the evidence is legally insufficient to support the jury's finding of intentional infliction of emotional distress. In his second point of error, Stokes argues the evidence is factually insufficient to support the jury's finding that he intentionally inflicted emotional distress upon appellees.

The standard of review used to determine the validity of a trial court's granting or refusing a judgment notwithstanding the verdict is the same as that used for review of a "no evidence" claim. *Dowling v. NADW Mktg., Inc.,* 631 S.W.2d 726, 728 (Tex.1982); *Purina Mills, Inc. v. Odell,* 948 S.W.2d 927, 932 (Tex.App.—Texarkana 1997, writ denied). The entry of a judgment notwithstanding the verdict is only proper if there is no evidence from which the jury could have made its findings. *Williams v. City of Midland,* 932 S.W.2d 679, 682 (Tex.App.—El Paso 1996, no writ). When reviewing a challenge to the legal sufficiency of evidence, i.e., a "no evidence" point of error, the reviewing court may consider only the evidence and inferences that support the challenged findings and should disregard all evidence and inferences to the contrary. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996); *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). If there is more than a scintilla of evidence to support the finding, the claim is sufficient as a matter of law, and any challenges merely go to the weight of the evidence. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which sup-

Dr. George N. Stokes, Kingwood, pro se.

Ross A. Sears, II, Williamson & Sears, Houston, appellees.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

ports the verdict. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *See Ortiz,* 917 S.W.2d at 772; *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The court of appeals is not a fact finder. Accordingly, the court of appeals may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986).

■■■ A plaintiff establishes intentional infliction of emotional distress if he can show: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) defendant's conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery is initially a question for the court. *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993); RESTATEMENT (SECOND) OF TORTS § 46 cmt. h. (1965). Outrageous conduct is that which goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized society. *Wornick Co.,* 856 S.W.2d at 734; RESTATEMENT (SECOND) OF TORTS § 46 cmt. d. Insensitive or even rude behavior does not amount to outrageous behavior. *Mattix–Hill v. Reck,* 923 S.W.2d 596, 597 (Tex.1996); *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). "Severe emotional distress" means distress so severe that no reasonable person could be expected to endure it. *Benavides v. Moore,* 848 S.W.2d 190, 195 (Tex.App.—Corpus Christi 1992, writ denied). Any party seeking recovery for mental anguish, even when advancing a cause of action that does not require the "severe" damages required for intentional infliction of emotional distress, must prove more than "mere worry, anxiety, vexation, embarrassment, or anger." *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995). However, proof of a physical manifestation of the emotional distress is not

required. *Krishnan v. Sepulveda,* 916 S.W.2d 478, 482 (Tex.1995).

■■■ Appellees worked for Stokes at his office in Cleveland, Texas. At trial, Carlton testified that at times Stokes approached her from behind and would put his "hand on her bottom." Carlton testified that this happened in the laboratory at the office four or five times and that she would stiffen and try to get away whenever this occurred. On another occasion, Stokes put his hand on the top of her back and "rubbed it down to the bottom of [her] rear." Additionally, while she was pregnant, Stokes would often walk by her and touch her on the rear as he was passing. Carlton also testified that once when Stokes and his wife were separated, he inquired when her husband would be at work and if she could get a babysitter so that she could come over to his house to "supposedly talk about this interview with this man." Carlton further testified about an incident where she left Stokes a note that said "I need to talk to you as soon as you get a chance." In response to her note, Stokes sat down on her desk and handed her a note which stated "Talk is cheap. I want action." Carlton quit her job because of Stoke's conduct.

Carlton testified that Stokes' actions embarrassed and degraded her and gave her nightmares. Plaintiff's expert Dr. David Axelrad, a psychiatrist who examined and evaluated all three appellees, testified that because of Stokes' conduct, Carlton was suffering from anxiety with symptoms of arousal intrusion, self-deprecation, inferiority, inadequacy, and significant symptoms of depression.

Puckett worked for Stokes for two and one-half months. She testified that during that time, Stokes touched and grabbed her rear end on several occasions. She stated that Stokes told her that he would love to examine her legs. Puckett informed Stokes that she did not appreciate him touching her and making sexual remarks and that she could not work under those circumstances. Stokes replied "That's just the way I am. I like to do stuff like that." He told her that he was attracted to her and wanted to have a

personal relationship with her. When she informed him that she could not work under those circumstances, he said "well then I don't guess you can work here for me." She consequently quit her employment with him.

Puckett testified that she was upset and stressed about what happened. She stated she was humiliated because the people in the office overheard what had happened. She further testified that the humiliation is going to last forever and that it will always be with her. She stated she missed some work because of what Stokes had done and that his actions made her physically sick. She suffered from gastrointestinal problems, abdominal pains, vomiting and depression.

Shirley worked as a receptionist for Stokes. At trial she testified that Stokes called her a "bitch" in front of five different staff members. On one occasion while she was in his office, Stokes kept staring at her breasts. She testified his look was "very scary.... It was a look as if he was an animal, and he was about to come after me. And I remember feeling scared talking to him." Stokes then walked around his desk over next to her and while looking down at a chart, brushed his face "across my chest into my breasts." She also testified that Stokes made a sexually suggestive remark while another employee was changing a light bulb.

Shirley stated that Stokes' actions upset her and that she left his office crying quite a few times. She also stated that his actions caused her to shake at her desk and to have occasional diarrhea, headaches and neckaches. Dr. Axelrad testified that Shirley suffered from sleep dysfunction, restlessness, anxiety and depression due to Stokes' actions. He also testified that each of the appellees exhibited signs of depression, anxiety and low self esteem, all attributable to Stokes' actions. In his opinion, all of the appellees needed to seek help for their problems associated with Stokes' behavior and that all suffered from severe mental anguish.

We find the evidence is both legally and factually sufficient to support the jury's finding of intentional infliction of emotional distress. The evidence shows that Stokes acted intentionally or recklessly; that his conduct was extreme and outrageous; that his conduct caused the appellees emotional distress; and that the emotional distress was severe. Additionally, the evidence shows that Stokes' conduct goes beyond all possible bounds of decency, and is utterly intolerable in a civilized society. Stokes' first two points of error are overruled.

In his third and fourth points of error, Stokes alleges the evidence is legally and factually insufficient to support the jury's finding that he committed assault upon appellees and proximately caused them damages. The definition of assault is the same in both civil and criminal law. *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 138 (Tex. App.—Amarillo 1997, writ denied). The Penal Code defines assault as: (a) A person commits an offense if the person: intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. TEX. PENAL CODE ANN. § 22.01(3)(Vernon 1994).

As outlined above, the evidence reveals that Stokes placed his hands on Carlton's bottom on several occasions. He grabbed Puckett's rear end on more than one occasion and he brushed his head up against Shirley's breasts. We find the evidence is both legally and factually sufficient to support the jury's finding that Stokes assaulted all three appellees. Points of error three and four are overruled.

In his fifth point of error, Stokes contends the evidence is legally and factually insufficient to support the jury's award of damages in jury questions three, four and five.[1] The jury awarded each of the appel-

---

1. #3 What sum of money, if paid now in cash, would fairly and reasonably compensate Lauri Puckett for her mental pain and anguish, if any, which resulted from the occurrence in question?
   #4 What sum of money, if paid now in cash, would fairly and reasonably compensate Deann

Carlton for her mental pain and anguish, if any, which resulted from the occurrence in question?
   #5 What sum of money, if paid now in cash, would fairly and reasonably compensate Cheryl Shirley for her injuries, if any, which resulted from the occurrence in question? Consider the

lees $87,500 in response to questions three, four and five. Shirley received an additional $2,800 for lost wages. The evidence mentioned above concerning the severe emotional distress suffered by all three appellees amounts to more than a scintilla of evidence to support the jury's award for mental anguish. Each appellee testified about problems such as depression, anxiety, embarrassment, lost of self-esteem, humiliation and various physical manifestations of their mental anguish. We find the evidence both factually and legally sufficient to support the jury's award of damages in jury questions three, four and five. Point of error five is overruled.

In his sixth point of error, Stokes complains the trial court erred in allowing into evidence the extraneous testimony of Kandy Olive–Collins and Hope Walters. Over Stokes' objection, the trial court allowed deposition testimony of Collins and Walters to be read to the jury. Collins and Walters are former employees of Stokes who both testified concerning incidents where Stokes touched them or brushed up against them. On appeal, Stokes urges that the testimony should have been excluded in accordance with rules of evidence 403 and 404(b).[2] He states that the testimony was character evidence and was not admissible to prove his conduct and did not fall with the exceptions listed in rule 404(b), and that the probative value of Collins' and Walters' testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or the needless presentation of cumulative evidence.

We may reverse a judgment based upon admission or exclusion of evidence only where: (1) the trial court erred; and (2) the error was reasonably calculated to cause and did cause the rendition of an improper judgment. *Gee v. Liberty Mutual Fire Insurance Co.*, 765 S.W.2d 394, 396 (Tex.1989); *Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263, 267 (Tex.App.—El Paso 1994, writ denied). The trial court's decision to admit or exclude evidence is within its sound discretion. *Durbin*, 871 S.W.2d at 268. Generally, however, all relevant evidence is admissible. TEX.R. CIV. EVID. 402. A trial court errs in excluding relevant evidence unless some rule or principle requires its exclusion. *Id.* Rules excluding relevant evidence must be supported by good cause and solid policy reasons. *Id.* The rules of evidence specifically contemplate admission of the habit or routine practice of a person. TEX.R. CIV. EVID. 406. Such evidence is relevant to prove that the conduct of the person on a particular occasion was in conformity with a habit or routine practice. *Id.; See also Underwriters Life Insurance Co. v. Cobb*, 746 S.W.2d 810, 815 (Tex.App.—Corpus Christi 1988, no writ). The habit or custom of a person doing a particular act is relevant in determining his conduct on the occasion in question. *Acker v. Texas Water Commission*, 790 S.W.2d 299, 302 (Tex.1990).

In *Durbin*, the El Paso court reversed the trial court's decision to exclude evidence of the employer's prior bad acts, namely the termination of other employees for filing workers compensation claims. The court remanded the case back to the trial court for admission of the evidence. In support of its finding, the court held that since the evidence sought to be introduced involved the same supervisory personnel, the same work place and the same pattern of conduct, the evidence should be admitted. *Id.* at 269.

Here, as in *Durbin*, the testimony of Collins and Walters involves the same supervisory personnel (Stokes), the same work place,

---

elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find. (A) Mental pain and anguish (B)Lost wages.

**2.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consider-

ations of undue delay, or needless presentation of cumulative evidence. TEX.R. CIV. EVID. 403.

**(b) Other wrongs or acts.** Evidence of other wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX R. CIV EVID. 404(b).

and the same pattern of conduct. The testimony is evidence of the habits or customs of Stokes and is relevant in determining his conduct on the occasion in question. The trial court did not err in finding that the testimony in question was relevant and that its probative value was not substantially outweighed by any prejudicial effects.

Additionally, the trial court did not err in overruling Stokes' 404(b) objection because the testimony was admissible to show Stokes' motive, intent, plan, or absence of mistake or accident. Point of error six is overruled.

In his seventh point of error, Stokes alleges the evidence is legally and factually insufficient to support the jury's finding to question 5(b), an award of lost earnings.[3] The jury awarded Shirley $2,800 in lost wages. Shirley testified that she was terminated from her employment when she finally stood up to Stokes. She further testified she remained unemployed for ten months and that she was making approximately $1,400 per month. She specifically calculated her lost wage damages to be $12,600 minus $4,800 in unemployment benefits for a total of $7,800. She added additional miscellaneous lost income associated with her job loss, which amounted to $3,904. Her total lost wage evidence offered at trial was $11,704.

The above evidence is more than a scintilla of evidence to support the jury's finding. Additionally, the evidence is not so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. Stokes' seventh point of error is overruled.

In his eighth point of error, Stokes alleges he received ineffective assistance of counsel at trial. Stokes complains that his trial counsel did not adequately interview witnesses prior to trial and that his counsel made little effort to locate and interview specific witnesses as Stokes had requested. Neither the Texas nor United States Constitution guarantees a right to counsel in a civil suit. *Harris v. Civil Service Com'n for Mun. Employees of City of Houston*, 803 S.W.2d 729, 731 (Tex.App.—Houston [14th Dist.] 1990, no writ). While the Sixth Amendment right to effective assistance of counsel is clearly recognized in criminal proceedings, it has not been extended to civil actions. *Interest of B.B.*, 971 S.W.2d 160 (Tex.App.—Beaumont 1998, n.w.h.)(not yet reported). Stokes' eighth point of error is overruled.

In their first cross point, appellees allege "the trial court erred in ordering a remittitur of the damages in this matter." The jury awarded each of the plaintiffs $87,500 in actual damages for mental anguish. The trial court granted Stokes' motion for remittitur and reduced this award to $15,000 for each plaintiff.

In reviewing a trial court's order of remittitur, the proper standard of review is factual sufficiency, not abuse of discretion. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex.1987); *Pope v. Moore*, 711 S.W.2d 622, 623–24 (Tex.1986). The court of appeals must examine all of the evidence in the record to determine whether sufficient evidence supports the damage award, upholding a remittitur only if some portion of the award is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pope*, 711 S.W.2d at 624.

After reviewing the evidence regarding appellees' mental anguish, which we have outlined above, we find that the evidence supporting the $87,500 award is not manifestly unjust or against the great weight and preponderance of the evidence. Appellees presented direct evidence of severe emotional distress. This evidence was barely refuted by Stokes. Appellees' cross point one is sustained.

We do not address appellees' second and third cross points because appellees state in their brief that these two points become "relevant or important if the court, for some reason, remanded this case back to trial."

In summary, Stokes' points of error are overruled. We sustain appellees' first cross point concerning remittitur and reinstate the jury's damage award of $87,500 for each

---

**3.** Stokes' sole objection at trial to jury question 5(b) was that the evidence was legally and factu-ally insufficient to support the submission of the issue to the jury.

appellee. We do not address appellees' cross points two and three.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.