Opinion issued November 4, 2004










     

In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00402-CV




GEOSCIENCE ENGINEERING & TESTING, INC., Appellant

V.

KELLY ALLEN, Appellee




On Appeal from County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 770,644




MEMORANDUM OPINION
          Kelly Allen sued Geoscience Engineering and Testing, Inc. for damages
resulting from a car accident. After a jury trial, the trial court awarded Allen $5,000
for past physical pain and mental anguish, $2,500 for future physical pain and mental
anguish, $2,000 for future medical expenses, $3,000 for past lost wages, $4,500 for
repair of damage to the vehicle, $5,000 for loss of vehicle in the past, and $2,100 for
diminution in value of the vehicle, for a total of $24,100, plus court costs and pre- and
post-judgment interest. In six issues, Geoscience contends that the evidence is legally
insufficient to support each damage award. Geoscience alternatively contends that
we should remit the $5,000 award for lost use of the vehicle and the $2,100 award for
diminution in value of the vehicle, on the ground that each is excessive. We conclude
that the evidence is legally insufficient to support the jury’s award for lost wages;
therefore, we reverse and render judgment that Allen take nothing for lost wages. In
all other respects, we affirm. 
Background
          During November 2001, Allen and Greg Smith, an employee of Geoscience,
were involved in a car accident.


 Geoscience failed to respond to Allen’s discovery
requests, and the trial court deemed Allen’s requests for admissions admitted. The
trial court further ordered Geoscience to respond to Allen’s interrogatories and
requests for production; otherwise, the court warned that it would strike Geoscience’s
answer and enter a default judgment. In February 2003, the trial court found that
Geoscience had not complied with its order. It therefore struck Geoscience’s answer
as to liability. The case proceeded to a jury trial on the issue of damages only.
          During the trial, Allen testified that an earlier job-related injury left him
partially disabled. He explained that in January 2000, he had fallen while working
on some ice in Fayetteville, North Carolina. After this injury, Allen did not work at
all in 2000. In 2001, he testified that he had worked some for himself, but admitted
that he had earned nothing that year. After the car accident with Geoscience in
November 2001, Allen could not work because he was “flat on his back” in bed. 
About nine months later, he returned to work, earning about $18.75 per hour. 
          Marshall Armeda, the general manager at Lone Star Truck and Auto, testified
as to the cost to repair Allen’s vehicle. Auto Wooten, a car salesman at Joe Myers
Ford, testified about car rental values and diminution in value. Tom McAvoy, the
chiropractor who treated Allen for his previous job-related injury, examined Allen
before trial and testified about Allen’s future medical expenses as a result of the
accident. Jeanne Allen, Allen’s mother, testified that Allen was in pain after the
accident and she had to assist him in activities such as cooking and driving. 
Standard of Review
          Geoscience contends that the evidence is legally insufficient to support the
damages award. Except with regard to the loss of use of the vehicle and the
diminution in the value of it, Geoscience does not challenge the factual sufficiency
of the evidence. To prevail on its legal insufficiency challenge, Geoscience must
show that no evidence supports the jury’s finding. See Croucher v. Croucher, 660
S.W.2d 55, 58 (Tex. 1983). In deciding a legal insufficiency challenge, we view the
evidence in a light that supports the jury’s findings and disregard evidence and
inferences to the contrary. Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739
(Tex. 2003). If more than a scintilla of evidence supports a challenged finding, then
a no-evidence challenge fails. Gen. Motors Corp. v. Sanchez, 997 S.W.2d 584, 588
(Tex. 1999). 
Repair Costs
          Geoscience contends that the evidence is legally insufficient to support the
$4,500 judgment for repair costs because (1) the repair costs were not “reasonable
and/or necessary,” (2) Armeda was not qualified as an expert, and (3) the collision did
not proximately cause the repair costs. 
          Reasonable and Necessary
          Geoscience contends that the repair costs were not “reasonable and/or
necessary” for like or similar services in the county and at the time they were
rendered. The jury awarded $4,767 for repair costs, and the trial court entered a
remittitur in the amount of $267 based on evidentiary problems with a wheel and turn
signal. To recover the cost of repair of a vehicle, a plaintiff must present sufficient
evidence to justify the jury’s finding that the costs of repair were reasonable and
necessary. Merchants Fast Motor Lines, Inc. v. State, 917 S.W.2d 518, 523 (Tex.
App.—Waco 1996, writ denied). “Reasonable” and “necessary” are not magic words
that a witness must speak to support a jury’s award. Id.; Ron Craft Chevrolet, Inc. v.
Davis, 836 S.W.2d 672, 677 (Tex. App.—El Paso 1992, writ denied); Carrow v.
Bayliner Marine Corp., 781 S.W.2d 691, 694 (Tex. App.—Austin 1989, no writ). 
Rather, the plaintiff must present sufficient evidence to justify the jury’s finding that
the costs of repair were reasonable and necessary. Ron Craft Chevrolet, 836 S.W.2d
at 677.
          Armeda testified that he had thirty years’ experience in the field of auto body
repair. He began working with cars by doing sanding, taping, and body work. He
then worked his way up to general manager, a position that entails giving auto repair
estimates and verifying that repairs are properly done. Armeda inspected Allen’s car
after the collision. Based on his thirty years of experience, education, training, and
knowledge of Allen’s car, Armeda testified that the repairs would cost $4,500. 
Armeda explained that he had prepared a written repair estimate, but did not bring it
with him to court. On cross-examination, Geoscience asked Armeda whether he had
seen any other written estimates. Armeda replied that Tommie Vaughn Ford had
prepared a written estimate to repair Allen’s car for approximately $5,100. 
          Plaintiff’s counsel admitted into evidence photographs of Allen’s car showing 
structural damage. Armeda testified that the entire car was out of alignment and the
damage was “significant.” He explained that necessary repairs would entail aligning
the car frame first, and then adjusting the remaining components, such as the doors,
hood, headlights, and grill. 
          Although Armeda did not specifically say that the repair costs were
“reasonable” and “necessary,” these are not magic words that are required to sustain
a judgment. See Merchants Fast Motor Lines, 917 S.W.2d at 523. He did indicate
that $4,500 is the repair cost based upon his training and experience. The record also
contains evidence that Tommie Vaughn Ford estimated that the repairs would cost
$5,100. See id. (holding that evidence was sufficient to support award of over
$50,000 to State for repairs to state-owned bridge based on engineer’s testimony that
costs were “typical” and not “out of line”). The $4,500 judgment for repair costs is
$600 less than Tommie Vaughn Ford’s $5,100 estimate. We hold that the evidence
is legally sufficient to support that the repair costs were reasonable and necessary. 
          Expert Qualifications
          At trial, Geoscience asked Armeda on cross-examination, “[Y]ou’re an expert
on body repair; is that correct?” Armeda replied, “Yes, sir.” On appeal, however,
Geoscience contends that Armeda was not qualified to render an expert opinion as to
repair costs. If a reliability challenge to the admission of expert testimony requires
the trial court to evaluate the expert’s underlying methodology, then a party must
timely object, so that the trial court has the opportunity to conduct such an analysis;
however, if a complaining party restricts its challenge to the face of the record—such
as when expert testimony is speculative or conclusory on its face—then it may
challenge the legal sufficiency of the evidence, even absent an objection to its
admissibility. Coastal Transport Co., Inc. v. Crown Cent. Petroleum Corp., 136
S.W.3d 227, 233 (Tex. 2004). 
          Geoscience did not challenge Armeda’s qualifications during the course of the
trial, and Armeda’s opinion is not speculative or conclusory on its face. We therefore
hold Geoscience’s challenge is of the type requiring an evaluation of the expert’s
methodology, and Geoscience waived any contention relating to the expert’s
qualifications. See id.; see also Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402,
409-11 (Tex. 1998) (error waived if objection to testimony, including qualifications
of experts, is not raised at trial level).
          Proximate Cause
          Geoscience contends the evidence is legally insufficient to show that the car
accident with Geoscience proximately caused the $4,500 repair expenses because
Armeda did not see Allen’s car in November or December of 2001. Rather, Armeda
saw the car twice in 2002, but did not begin to repair it until January 2003 because
Allen had no money to pay for repairs. On direct examination, Allen asked Armeda
if the car’s “disalignment” was due to the accident. Geoscience objected on the basis
of speculation, and the trial court sustained the objection. Geoscience thus contends
that no evidence supports “proximate cause.”
          Geoscience ignores, however, that the trial court admitted photographs of the
damaged truck as plaintiff exhibits 2, 3, 4, and 5. Allen testified that exhibit 5 was
the wheel and tire after the collision. He identified a hairline crack on the rim “where
[he] was initially hit.” He further testified that he had the car towed from the accident
site and placed it in storage “as a result of the collision.” The tire in exhibit 5 is
clearly the same tire in exhibit 1, which Armeda identified as a fair and accurate
representation of the vehicle when Allen brought it into his shop. We conclude that
this evidence is legally sufficient to support that the collision proximately caused the
$4,500 repair costs.Loss of Use
          Geoscience contends that the evidence is legally insufficient to support the
$5,000 award of loss of use.


 Alternatively, Geoscience contends that the evidence
is factually insufficient to support the $5,000 award of loss of use. In reviewing
factual sufficiency, we consider all the evidence supporting and contradicting the
finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We set
aside the verdict only if the finding is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986). 
          Auto Wooten, a car salesman at Joe Myers Ford with 21 years’ experience,
testified about car rental costs. Wooten is familiar with this market based on his
relationship with the in-house auto rental agency at Joe Myers Ford. Based on his
experience, education, and training, he opined that the reasonable cost to rent a car
is $25 per day. The reasonable cost to rent a truck such as Allen’s is $40 or $50 per
day. 
          Geoscience complains on appeal that the amount of time Allen was without his
vehicle is excessive. Armeda explained that the repairs to Allen’s car generally would
take about two weeks to complete, depending on the availability of parts. Allen,
however, could not begin repairs immediately, because he had no money. In 2003,
Allen paid $1,700, and Armeda began some repairs. The car remained in Armeda’s
shop for two months before trial without completion of the repairs. As of the date of
trial, on February 26, 2003, the car still had not been fully repaired. Allen thus
testified that he was without the use of his car for over fifteen months—from the date
of the November 10, 2001 accident until the February 26, 2003 date of trial. 
          In Luna v. North Star Dodge Sales, the Texas Supreme Court addressed the
correct method by which to measure loss of use damages for deprivation of the use
of a car to be repaired. 667 S.W.2d 115, 118-19 (Tex. 1984). Luna rejected the
argument that in order to recover loss of use damages, a plaintiff had to prove that he
actually incurred monetary loss by renting an automobile or expending monies for
alternative transportation. Id. at 118. Instead, a plaintiff may establish loss of use by
showing the reasonable rental value of a substitute automobile. Id. at 119. 
          The Texas Supreme Court in Luna also addressed the issue before us—the
period of compensatory loss. Id. The intermediate appellate court had determined
that if the loss of use is over an extended period of time, then the proper method of
proving “reasonable rental value is not by the day, week, or month, but by a sum
certain covering the entire period.” Id. Luna criticized “a rigid and unbending rule,”
explaining that the period of compensation varies with the character of the property
and the facts of the case. Id. (citation omitted). The court held that “the rental value,
whether by the day, week, or month, is indicative of the loss suffered.” Id. (reversing
and remanding because San Antonio Court of Appeals did not address factual
sufficiency regarding award for loss of use).
          The Austin Court of Appeals addressed a similar issue in Mondragon v. Austin,
954 S.W.2d 191, 194 (Tex. App.—Austin 1997, pet. denied). In Mondragon, the car
damages could have been repaired in two weeks, but the defendant’s insurer refused
to pay the claim and the plaintiff lacked the financial resources to pay for repairs. 
The court upheld loss of use damages for a period exceeding one year:
If we were to limit Austin’s loss of use award to two weeks, we would
be penalizing him for his lack of financial resources, denying him
recovery of the damages he suffered because of Mondragon’s negligent
act, and allowing the insurance company to reap the benefit of its refusal
to pay the meritorious claim. The law does not permit or require such
a result.

Id. 
          Here, Wooten testified that the daily rental cost is $25 for a car and $40 or $50
for a truck. Allen testified that he was without the use of his car for over fifteen
months. We hold the evidence is legally sufficient to support the $5,000 award for
loss of use. With regard to factual sufficiency, we note that a plaintiff has a duty to
mitigate his damages, and Geoscience’s argument is in that vein. Geoscience,
however, did not request a mitigation instruction in the jury charge nor did it provide
proof such that the jury’s verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong. Here, the evidence indicates that Allen was not
working at the time of the accident and could not afford the cost to repair the vehicle
for an extended period of time. We hold that the evidence is factually sufficient to
support the jury’s award of damages for loss of use.
          Expert Qualifications
          On appeal, Geoscience contends that Wooten was not qualified to give an
expert opinion on loss of use. Geoscience did not challenge Wooten’s qualifications
or opinion during the course of the trial, and his testimony at trial is not speculative
or conclusory on its face; therefore, Geoscience waived any arguments on appeal
relating to the expert’s qualifications. See Coastal Transport Co., 136 S.W.3d at 233.
 
Diminution in Value
          Geoscience contends that the evidence is legally insufficient to support the
$2,100 award for diminution in value to the vehicle.


 Allen testified that he bought
the car two weeks before the collision and the blue book value at that time was
$18,700. Based on his knowledge, experience, and training, Wooten opined that the
value of Allen’s car at the time of the collision was “somewhere around 14 to
$15,000.” Wooten further testified that the collision resulted in a 15 to 20 percent
diminution in value. Based on this evidence, the jury could have concluded that the
damage Allen sustained in the wreck resulted in a diminution in value of $2,100. We
hold the evidence is legally sufficient to support the $2,100 award for loss of value. 
          Expert Qualifications
          On appeal, Geoscience contends that Wooten was not qualified to give an
expert opinion on diminution in value. Here again, Geoscience did not challenge
Wooten’s qualifications during the course of the trial; therefore, Geoscience waived
any arguments on appeal relating to the expert’s qualifications. See Coastal
Transport Co., 136 S.W.3d at 233.
Past Lost Wages
          Geoscience contends that the evidence is legally insufficient to support the
$3,000 award for past lost wages. Neither Geoscience nor Allen objected to the
charge, and thus we review the sufficiency of the evidence of the charge as
written—in this case, whether the evidence is legally sufficient to prove “loss of
wages in the past.” See Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001) (holding
that if no objection to jury charge is made, then sufficiency of the evidence is
reviewed in the light of submitted charge). After high school, Allen earned about $30
per hour in commercial construction doing “heavy industrial type jobs.” In January
2000, he suffered from a job-related accident and did not work the entire year of
2000. In 2001, he “worked for himself” doing “estimating jobs” in a “supervisory
capacity,” but testified that he had earned no money. During direct examination, he
explained the nature of his work from the period of time after the job-related accident
and before the car accident:
I was — knew that I couldn’t do anything physical anymore, so I got to
back up and regroup a little bit and decided that I would try again to
some contract work. And I actually had a couple guys working for me
who was working on my house, getting it ready, remodeled. And I had
talked to them about using them on some future contract jobs and I
actually estimated a couple of jobs and was kind of waiting on some
answers on any of them. 

Allen further testified during cross-examination:
I was actually able to you know estimate and that kind of thing. I mean
I could — had I got a job, yeah, I could have worked that job. I mean
not physically but I could have hired guys and pursued it. 
          The car accident with Geoscience occurred on November 10, 2001. As a result
of the accident, Allen could not work because he was “flat on [his] back in bed.”
Approximately nine months later, in July 2002, Allen returned to work, earning about
$18.75 per hour. Allen testified that he “could have made” about $18.75 per hour
during that nine-month period. 
          Allen testified that he missed forty hours of work per week during the nine-month period, for a total of 1,440 hours. The calculation of 1,440 hours at $18.75 per
hour totals $27,000. During closing argument, plaintiff’s counsel requested a “rough
estimate” of $28,000. The jury awarded lost wages of $3,000. 
          According to Geoscience, Allen’s testimony about the money he “could have
made” relates to lost earning capacity, a question not posed to the jury, rather than
lost wages. Courts have distinguished between “past lost wages” and “loss of earning
capacity.” Past lost wages or earnings are the actual loss of income due to an inability
to perform a specific job a party held from the time of injury to the date of trial. See
Dawson v. Briggs, 107 S.W.3d 739 (Tex. App.—Fort Worth 2003, no pet.) (holding
that evidence was sufficient to support lost wages for motorist who had made $9 an
hour working in doctor’s office); Strauss v. Cont’l Airlines, Inc., 67 S.W.3d 428, 435
(Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding that evidence was
insufficient to support award for loss of earning capacity and distinguishing from loss
of wages). 
          Proof of past lost wages generally requires evidence of the plaintiff’s actual
earnings before and after injury,


 while proof of future loss of earning capacity is
always uncertain and is more a matter of the discretion of the jury. Strauss, 67
S.W.3d at 435.


 Geoscience contends the evidence is insufficient to prove “loss of
wages in the past” because Allen had no wages for over eighteen months prior to the
car accident. Allen did not work at all in 2000 after his job-related injury, and before
this accident. In 2001, he worked for himself, but admitted he had no earnings, and
did not provide a tax return. 
          The Beaumont Court of Appeals addressed a similar issue in Bailey v. Merrill,
582 S.W.2d 489, 491 (Tex. Civ. App.—Beaumont 1979, writ ref’d n.r.e.). In Bailey, 
the plaintiff, who was in the home construction business, testified that he had “turned
down” nine to eleven jobs after his car accident because of his injuries. The court
held that he offered “no proof of the type of house, the cost or anticipated profit to be
derived from any such ‘job.’ ” Id. The court therefore held that this evidence was
insufficient to support loss of earnings. Id. 
          Similarly, Allen provided no proof of the type of “estimating” jobs he could
have done during the nine months after the car accident. He simply testified that he
had “talked” to “a couple guys” about “using them on some future contract jobs and
I actually estimated a couple of jobs and was kind of waiting on some answers on any
of them.” 
          Allen relies on Stokes v. Puckett, 972 S.W.2d 921, 927 (Tex. App.—Beaumont
1998, pet. denied), in which the Beaumont Court of Appeals held that the evidence
was sufficient to support a jury award for lost wages. In Stokes, a woman quit her job
because of Stokes’s assaults. Id. The plaintiff was employed at the time of the
assault and offered evidence of the wages she “was making” at that job. Id. The jury
awarded lost wages for the period of time she was unemployed. Id. Stokes is
distinguishable, however, because in this case, Allen offered no evidence of the
wages he “was making” at the time of the accident; rather, he testified about what he
“could have made” and conceded that he had earned no wages in the two years before
the accident. Viewing the evidence in a light that tends to support the trial court’s
judgment, and disregarding evidence and inferences to the contrary, we conclude that
the evidence is legally insufficient to support a $3,000 award for lost wages.
Future Medical Expenses 
          Geoscience contends that the evidence is legally insufficient to support the
$2,000


 award for future medical expenses because Allen received no medical
treatment for the alleged injuries from the date of the accident until the date of trial. 
Whether Allen received past medical treatment relates to past medical expenses, a
question not posed to the jury. Dr. McAvoy, the chiropractor who treated Allen for
his previous job-related injury, examined Allen before trial and testified as to Allen’s
future medical expenses as a result of the car accident:
Q. Now based on your examination of him that you had recently, in your
opinion, based upon reasonable medical probability, what will his future
medical expenses be?
 
A. Based on other patients that I’ve seen, the same type of injuries it
would probably [sic] six the eight weeks of treatment which would be
12 to 14, $1,500 I guess. . . . If you go at it six weeks, it will be about
$1,500. If it took two months, you’re up around you know another six,
$800, so you get in the $2,000 range. 
We hold that Dr. McAvoy’s testimony is legally sufficient evidence to support the
$2,000 award for future medical expenses.
Past and Future Physical Pain and Mental Anguish
          Geoscience contends that the evidence is legally insufficient to support the
$5,000 and $2,500 awards for past and future physical pain and mental anguish,
respectively, because Allen presents no evidence of the duration or severity of his
anguish. Geoscience asserts that Allen’s evidence for this claim amounts to nothing
more than mere worry, anxiety, vexation, embarrassment, and anger. 
          To recover for mental anguish, a party must offer either direct evidence of the
“nature, duration, or severity” of a plaintiff’s anguish, thus establishing a “substantial
disruption in the plaintiff’s daily routine,” or other evidence of a “high degree of
mental pain and distress” that is “more than mere worry, anxiety, vexation,
embarrassment, or anger.” Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d
607, 614 (Tex. 1996). 
          Allen testified that he was “flat on his back” as a result of the accident and had
difficulty walking for about seven months as a result of the car accident. Dr. McAvoy
opined that a car accident, such as the one in this case, could cause someone to miss
from six to eight months of work. Jeanne Allen, Allen’s mother, testified that, after
the car accident, Allen would “grimace or make a face like you do when you’re in
pain” when he sat down or stood up. He moved “very, very carefully and stiff,
especially stiff in his back and walk very stiffly.” After the accident, she assisted him
in activities such as cooking, driving, and “normal house things” that she had not
done for him before the accident. This evidence amounts to “more than mere worry,
anxiety, vexation, embarrassment, or anger.” See id. We hold that the evidence is
legally sufficient to support the award for past and future physical pain and mental
anguish. 
Conclusion
          We conclude that the evidence is legally insufficient to support the award for
past lost wages; therefore, we reverse and render that Allen take nothing for past lost
wages. In all other respects, we affirm the judgment of the trial court. 
 
 

                                                             Jane Bland
                                                             Justice
 
Panel consists of Justices Taft, Jennings, and Bland.