

NUMBER 13-07-00046-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF V.N.S., A CHILD

**On appeal from the 284th District Court
of Montgomery County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Garza**

On September 27, 2006, appellant, Kimberlee Schmidt, and appellee, Robert Mark Lair, were appointed joint managing conservators of their nine-year-old daughter, V.N.S. Lair was given the exclusive right to designate V.N.S.'s primary residence. Schmidt filed a motion for new trial on October 27, 2006, which the trial court denied. By four issues, Schmidt now appeals, contending that the trial court abused its discretion by requiring Schmidt to have supervised possession, limited geographically and limited to daytime hours, and that she was denied effective assistance of counsel. We affirm the trial court's judgment.

## I. BACKGROUND

On March 1, 2000, Schmidt and Lair entered into an agreed order establishing Lair as the father of Schmidt's daughter, V.N.S. The parties were named joint managing

conservators and Schmidt was given the exclusive right to determine the child's residence. *See* TEX. FAM. CODE ANN. § 101.016 (Vernon 2002). After being denied Christmas visitation with V.N.S., Lair filed a motion for the issuance of a writ of attachment on December 27, 2005. The trial court granted the motion and ordered the clerk to issue the writ of attachment. In response, Schmidt filed an "Application for Injunction and Modification of Visitation" on December 28, 2005, seeking an order barring the writ of attachment from being issued and requesting that Lair's visitation with V.N.S. be supervised. In support of this request, Schmidt cited Lair's arrest history and V.N.S.'s alleged fear of her father.

The trial court ordered that V.N.S. be placed temporarily with Laura Nash Thomas, Schmidt's mother and V.N.S.'s grandmother. The court also ordered that Schmidt's live-in boyfriend (now husband), Jay Edward Kimberly, a registered sex offender, was to have no contact with V.N.S. unless supervised by Thomas.

Lair filed suit to modify the parent-child relationship order, noting that Schmidt was living with Kimberly, who had been convicted three times for indecent exposure to a minor. On June 6, 2006, a jury trial was held. In accordance with the jury's verdict, the court ordered on September 27, 2006 that: (1) Lair be given the exclusive right to designate the primary residence of V.N.S.; (2) Lair be permitted to designate the primary residence of the child with a geographic restriction; and (3) that the geographic area be within the state of Texas, and within 400 miles of Schmidt's residence in Montgomery County. The trial court's order further stated as follows:

> . . . Kimberlee V. Schmidt shall not remove the child from Dallas County, Texas or any county contiguous to Dallas County, Texas without further modification of this Order. . . . The Court finds that credible evidence has been presented that Kimberlee V. Schmidt has a history or pattern of exposing the child to a convicted sexual predators [sic], her husband, Jay Edward Kimberly, with whom she resides. IT IS THEREFORE ORDERED that visitation shall be under the supervision of Nancy Hardin[, Schmidt's maternal grandmother].

The trial court also awarded Lair's attorneys and the amicus attorney their requested

2

fees. Schmidt's attorney was denied her requested fees based on the trial court's finding that the "fees were not reasonable given the quality of representation." On October 27, 2006, Schmidt filed a motion for new trial. The motion was denied on December 5, 2006. This appeal ensued.

## II. Discussion

### A. Supervised Possession

By her first three issues, Schmidt argues that the trial court erred by: (1) requiring Schmidt to have supervised possession; (2) ordering that Schmidt's visitation be within Dallas County or in counties wholly contiguous to Dallas County; and (3) ordering that Schmidt's visitation be limited to only daytime hours, and only under the supervision of Schmidt's maternal grandmother, Nancy Hardin. Schmidt alleges that "there is no evidence that such restrictions are in the best interest of her daughter" and "there is no evidence in the record that [she] was in any way neglectful during the first seven years of her daughter's life . . . nor that she is likely to violate the court's order prohibiting her husband, Kimberly, access to the child."

### 1. Standard of Review

The best interest of the child shall always be the court's primary consideration in determining the issues of conservatorship, possession, and access to the child. *Id.* § 153.002 (Vernon 2002). The trial court is given wide latitude in determining the best interests of a minor child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). The judgment of the trial court will be reversed only when it appears from the record as a whole that the court has abused its discretion. *Id.*; *Miles v. Peacock*, 229 S.W.3d 384, 391 (Tex. App.–Houston [1st Dist.] 2007, no pet.). An abuse of discretion occurs when a court acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. See *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). However, a claim of abuse of discretion will not succeed provided that some evidence of substantive and probative character exists to support the trial court's factual

3

findings.  *See In re J.R.P.*, 55 S.W.3d 147, 151 (Tex. App.–Corpus Christi 2001, pet. denied); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.–Houston [1st Dist.] 1993, writ denied).

Here, Schmidt challenges the sufficiency of the evidence supporting the trial court's judgment.  In reviewing modification of rights under an abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in determining whether the trial court abused its discretion.  *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.–Fort Worth 2002, pet. denied).  In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we must inquire:  (1) did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *Id.*  (citing *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.–Houston [14th Dist.] 2002, no pet.), *Norris v. Norris*, 56 S.W.3d 333, 338 (Tex. App.–El Paso 2001, no pet.), *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.–El Paso 1998, no pet.)). With regard to the first question, the traditional sufficiency review comes into play.  *Id.*  We then proceed to determine whether the trial court made a reasonable decision based on the elicited evidence.  *Id.*

An appellate court will sustain a challenge to the legal sufficiency of evidence only if:  (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).  More than a scintilla of evidence exists, and the evidence is legally sufficient, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence.  *Lee Lewis Constr. Co. v. Harrison*, 70 S.W.3d 778, 782-83 (Tex. 2001).  In conducting our review, we credit

4

evidence supporting the judgment if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827; *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 748 (Tex. App.–Corpus Christi 2006, pet. denied).

## 2.    Analysis

Schmidt suggests that the only "objective" evidence in the record supporting the trial court's judgment was a Texas Department of Family and Protective Services investigation and its report of findings.[1] We disagree.  First, testimony given by various witnesses lends support to the jury's findings.  During her own testimony, Schmidt admitted that on the evening she met Kimberly, she learned that he had been convicted of three different counts of indecent exposure to a minor.  Schmidt also testified that, after a court order was put in place banning Kimberly from spending unsupervised time with V.N.S., she chose to allow Kimberly to remain in her home despite the fact that it meant sending her daughter to live with the child's grandmother.

In addition to Schmidt's testimony, Dr. Robert Breen, Lair's counselor, acknowledged that he had reviewed a court document indicating a very high likelihood that Kimberly will commit another sex offense.  Noting Kimberly's three convictions for child sex offenses, Dr. Breen expressed that he has concerns regarding Schmidt's role as a mother:

> Well, my concerns would be I would imagine that she is torn then between her allegiance to her child or children and then her allegiance to the man that she's married.  And trying to balance that, I would think that becomes an issue of what's going to kind of be best for her.  There may be a certain narcissism or selfishness on her part that I need this man, I need child support, whatever it is, to keep afloat.

Finally, in response to a question regarding V.N.S.'s best interests, Dr. Breen pointed out that in his "strong professional opinion . . . [V.N.S.] would be much, much better served

---

[1] Schmidt asserts that the Texas Department of Family and Protective Services ("TDFPS") report concludes that "Base [sic] on the evidence and after staffing the case with supervisor Emma Davis the case will be ruled out for allegations of sexual abuse and neglectful supervision of [V.N.S.] and [C.S., V.N.S.'s ten-year-old half-brother]."  However, the reporter's record does not include this report, and so we do not consider it in our review.  Nevertheless, as discussed herein, we find sufficient additional evidence supporting the trial court's judgment.

living with her biological father and stepmother."

Another witness, Teri Bennette, the sex offender registrar for the Montgomery County Sheriff's Department, explained to the jury that although Kimberly is not subject to restrictions,[2] he is registered as a high-risk level sex offender. Bennette further testified that, according to Article 62 of the Sex Offender Registration Program, when a person is designated as being "high-risk," that person is considered a "serious danger to the community" and one that "will continue to engage in criminal sexual conduct." *See* TEX. CODE CRIM. PROC. ANN. art. 62.007(3) (Vernon 2006).

At the conclusion of the trial, the trial court explained why it believed its decisions regarding Schmidt's visitation rights were supported by the jury's verdict:

> [t]his jury spoke and I think this jury spoke correctly . . . I am somewhat concerned about the lack of concern of the child's access to folks who have had some problems in the past. And I totally agree with the amicus and accept his recommendation that there needs to be supervised visitation.

The "folks who have had some problems in the past" referred to by the trial court include: (1) Kimberly, the child's stepfather, who was convicted three times for sex-related offenses; (2) Harold Thomas, the child's maternal grandfather, who once was given deferred adjudication for a sex-related crime; (3) Chris Thomas, the child's maternal uncle, who was arrested for enticement of a child; and (4) Lair, the child's biological father, who has a criminal past, including an "exposure" charge that was subsequently dropped in exchange for his payment of $300 to the Society for Prevention of Cruelty for Animals, and charges of menacing with a deadly weapon and family violence.

After reviewing the evidence in the light most favorable to the judgment, we find that Schmidt's tendency to gravitate toward "folks who have had some problems in the past" offers far more than a scintilla of evidence supporting the jury's finding and the court's ruling as to V.N.S.'s best interests. *See City of Keller*, 168 S.W.3d at 810. Since

---

[2] Bennette testified that Kimberly was not subject to stipulations or restrictions other than registering as a sex offender. He is neither restricted from being around children, nor is he prohibited from being near schools.

substantive and probative evidence were present to support the trial court's final order, we find that the court did not act unreasonably or arbitrarily. *See In re J.R.P.*, 55 S.W.3d at 151; *Downer*, 701 S.W.2d at 241-42. Thus, Schmidt's claims that the trial court erred by abusing its discretion by placing restrictions on her visitation rights fail. *See Gillespie*, 644 S.W.2d at 451 (holding that the trial court did not abuse its discretion in awarding custody of the minor child to her father since there was sufficient competent evidence to support the trial court's determination that the best interest of the child would be served). Accordingly, Schmidt's first, second, and third issues are overruled.

## B. Ineffective Assistance of Counsel

In her fourth issue, Schmidt alleges that she was denied her constitutional right to have effective counsel for her defense in a matter where substantive family relationships were terminated, modified, or altered. Schmidt asserts that her counsel was ineffective and points to the trial court's statement at trial that "the court finds that [the attorney's fees charged by Schmidt's counsel] were not reasonable given the quality of representation." Additionally, Schmidt claims that her attorney made several errors including failing to conduct discovery, failing to make timely and proper objections, and failing to request findings of fact and conclusions of law as to Schmidt's visitation limitations.[3]

Generally, the doctrine of ineffective counsel is limited to criminal cases. *Cherqui v. Westheimer St. Festival Corp.,* 116 S.W.3d 337, 343-44 (Tex. App.–Houston [14th Dist.] 2003, no pet.); *Stokes v. Puckett,* 972 S.W.2d 921, 927 (Tex. App.–Beaumont 1998, pet. denied). However, an exception to this general rule is found when an indigent person is assigned counsel in a parental-rights termination case. *See In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *see also* TEX. FAM. CODE ANN. § 107.013(a)(1) (Vernon Supp. 2007) (providing that the court shall appoint an attorney ad litem to represent the interests of a indigent parent respondent in a parental-rights termination case). In regard to appointment

---

[3] Schmidt's appellate counsel also claims that Schmidt's trial counsel is "presently incarcerated in Bryan, Texas awaiting trial for alleged money laundering."

of counsel for termination cases, the Texas Supreme Court has held that the right to appointed counsel includes the right to effective counsel. *See In re M.S.,* 115 S.W.3d at 544; *In re K.L.,* 91 S.W.3d 1, 11 (Tex. App.–Fort Worth 2002, no pet.) (noting that the usual remedy for counsel's deficiencies in a civil case is through a malpractice suit seeking monetary damages, but that a malpractice suit does not provide an apt remedy in a termination case, where the effect of the deficiencies may result in the loss of the parental-child relationship). This case, however, does not fall within this exception. First, Schmidt's attorney was not appointed; rather, she was retained by Schmidt to represent her in the proceedings below. Second, Schmidt's parental rights were modified, but not completely terminated.

Schmidt requests that we extend the parental-rights termination exception to include cases which deal with "[significant] visitation and custodial rights." We decline to do so. We believe that the exception is properly limited to cases where indigent parents are appointed counsel and where parental rights are being wholly terminated. *Cf. In re K.L.,* 91 S.W.3d at 11. Therefore, we apply the general rule that Schmidt has no constitutionally protected right to effective assistance of counsel in this case. *See McCoy v. Tex. Instruments, Inc.,* 183 S.W.3d 548, 553 (Tex. App.–Dallas 2006, no pet.) (noting that the doctrine of ineffective assistance of counsel does not extend to civil cases); *Cherqui,* 116 S.W.3d at 343. Accordingly, we overrule Schmidt's fourth issue.

## III. CONCLUSION

Having overruled Schmidt's four issues on appeal, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 3rd day of July, 2008.

8