

# NUMBER 13-06-00580-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **I.E. MILLER FOWLER TRUCKING, LLC,** | **Appellant,** |

**v.**

| | |
|---|---|
| **B-C EQUIPMENT SALES, INC.,** | **Appellee.** |

## On appeal from the 347th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Garza

I.E. Miller Fowler Trucking, LLC ("Miller") appeals the trial court's judgment awarding damages and attorney's fees to B-C Equipment Sales, Inc. ("B-C"). B-C leased two cranes to Miller pursuant to the terms of written lease agreements. Upon the conclusion of the lease periods, B-C discovered that the cranes had been damaged. B-C asserted that Miller was contractually obligated (1) to pay the costs of repairing the damages at B-C's standard prices, and (2) to continue to make payments under the lease agreements until the repairs could be completed. Miller refused to pay and B-C sued. A jury awarded damages and attorney's fees to B-C, and the trial court rendered judgment upon the verdict. We affirm.

## I. Background

Miller is a Louisiana-based corporation in the business of moving and relocating oil drilling rigs. B-C is a Texas corporation that leases cranes and other heavy equipment such as excavators and wheel loaders. On April 4, 2001, Miller and B-C entered into an "Equipment Lease" agreement whereby B-C agreed to lease to Miller a 100-ton Link-Belt crawler crane (the "100-ton crane") for $9,500 per month. On May 22, 2002, the parties entered into a second lease agreement whereby B-C agreed to lease to Miller an 80-ton Link-Belt crawler crane (the "80-ton crane") for $8,000 per month. Both lease agreements contained the following provision regarding liability in the event of the cranes sustaining damage during the period of the lease:

> 5. MAINTENANCE AND REPAIR. . . . The equipment shall be returned in the same condition as when received, except for normal wear. IF THE EQUIPMENT, WHEN RETURNED TO LESSOR [B-C], IS IN NEED OF REPAIR, OR IS IN A DAMAGED AND WORN CONDITION (INCLUDING DAMAGE AND WEAR TO TIRES) NOT ATTRIBUTABLE TO NORMAL WEAR AND TEAR, LESSEE [Miller] SHALL BE OBLIGATED TO PAY TO LESSOR THE REASONABLE COSTS OF THE REPAIRS AND, IN ADDITION, LESSEE SHALL BE OBLIGATED TO CONTINUE THE PAYMENT OF RENTAL, THE RATE HEREIN STATED, FOR THE PERIOD OF TIME REASONABLY NECESSARY TO REPAIR LESSOR'S EQUIPMENT AND TO RESTORE IT TO A GOOD, SAFE AND SERVICEABLE CONDITION. LESSEE AGREES THAT ANY REPAIRS AND LABOR FURNISHED BY B-C EQUIPMENT SALES, INC., SHALL BE CHARGED TO AND PAID BY LESSEE AT B-C EQUIPMENT SALES, INC., PRICES FOR SIMILAR REPAIRS, PARTS, OR ACCESSORIES, IN FORCE AT THE TIME SAME ARE SUPPLIED.

On April 7, 2003, Miller returned the 100-ton crane to B-C, at which time B-C conducted a standard "check-in" inspection of the crane. Upon performing the inspection, B-C discovered that the 100-ton crane had sustained severe damages. B-C estimated that it would cost $98,758.34 to repair those damages. On June 11, 2003, Miller returned the 80-ton crane to B-C, at which time it discovered that the 80-ton crane also had severe damages. B-C estimated that it would cost $91,126.86 to repair the 80-ton crane.

After Miller refused to pay the $189,885.20 demanded by Miller to repair the cranes, B-C filed suit on October 28, 2003, alleging that (1) Miller breached the lease agreements by refusing to pay for repair of the cranes, and (2) Miller's negligence proximately caused

2

damages suffered by B-C. B-C requested damages in the amount it expended to repair the cranes, and also alleged that Miller was responsible for continuing to make payments during "the period of time reasonably necessary to repair . . . and restore [the cranes] to a good, safe, and serviceable condition."

A trial was conducted before a jury on January 17, 2005, after which a verdict was returned in favor of Miller. Specifically, the jury found that the lease agreements were validly entered into by Miller and B-C but that Miller did not fail to comply with those agreements. B-C filed a motion for new trial on March 21, 2005, contending that the jury's findings were against the overwhelming weight of the evidence. *See* TEX. R. CIV. P. 329(b)(3) (stating that a point in a motion for new trial is a prerequisite to a complaint on appeal that a jury finding is against the overwhelming weight of the evidence). The trial court granted B-C's motion for new trial by written order dated April 29, 2005, stating specifically that the jury's negative answer to Question Number Two—asking whether Miller failed to comply with the 100-ton crane lease agreement—was against the overwhelming weight of the evidence.

The case was retried before a jury on April 3, 2006. The primary issue at trial was the amount and reasonableness of the charges to repair the two cranes. B-C asked the jury to award it the following: $93,768.64 for costs to repair the 100-ton crane; $95,389.78 to repair the 80-ton crane; additional damages for lost profit caused by its inability to lease the cranes during their periods of repair; $85,000 for trial attorney's fees; $7,500 in attorney's fees for responding to any appeal to this Court; and $5,000 in attorney's fees for responding to any petition for review filed in the Texas Supreme Court.

On April 10, 2006, the jury returned a verdict finding that Miller and B-C had entered into valid agreements for leasing the two cranes, and that Miller had failed to comply with the agreements. The jury awarded damages of $49,457.44 for damages to the 100-ton crane; $51,484.36 for damages to the 80-ton crane; $8,000 for lost profit due to B-C's inability to lease the 80-ton crane during its period of repair; and nothing for lost profit due

3

to B-C's inability to lease the 100-foot crane during its period of repair. The jury additionally awarded B-C $64,000 in trial attorney's fees, but awarded no appellate attorney's fees.[1] The trial court rendered a final judgment on the jury's verdict on July 12, 2006. Miller filed a motion for new trial on August 9, 2006, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal ensued.

## II. DISCUSSION

Miller now challenges the trial court's judgment on the jury verdict, contending that: (1) the trial court erred in disallowing evidence of the wholesale cost of repair parts; (2) the jury charge contained errors; and (3) there was insufficient evidence to support the jury's award of damages for costs of repair.

## A. Evidence of "Actual Costs" of Damages

By its first issue, Miller argues that the trial court erred in disallowing evidence of wholesale costs—what Miller describes as "actual costs"—incurred by B-C in undertaking the repairs of the two cranes.[2] The evidence proffered by Miller would have shown the amounts that B-C was charged by Link-Belt and other suppliers for the parts that were used in repairing the cranes; Miller then intended to show the jury that B-C marked up the prices, charging Miller more for those same parts. For example, a chart prepared by Miller included as part of its Bill of Exception showed that Link-Belt had charged B-C $15,541.21 for a twenty-foot base section for the 80-ton crane, and B-C had in turn charged Miller $22,201.72 for that same part.

Evidentiary rulings are committed to the trial court's sound discretion. *Bay Area*

---

[1] B-C asserts a cross-point challenging the jury's failure to award appellate attorney's fees. However, because B-C did not file a notice of appeal in the trial court, it has not preserved this issue for appeal. *See* TEX. R. APP. P. 25.1(c) ("The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause."); *CHCA E. Houston, L.P. v. Henderson*, 99 S.W.3d 630, 635-36 (Tex. App.–Houston [14th Dist.] 2003, no pet.) (cross-point alleging entitlement to attorney's fees is a request for "more favorable relief" under Rule 25.1(c)).

[2] B-C claims that Miller has waived this issue on appeal because it did not include any citations to the record in the argument section of its appellate brief. B-C cites Texas Rule of Appellate Procedure 38.1(h) which states: "The [appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). Though Miller did not cite the record in its argument section, it did include appropriate citations to the record in the "Statement of Facts" section of its brief. These citations were sufficient to allow this Court to conduct an effective review of the issues on appeal. We find, therefore, that Miller did not waive this issue under rule 38.1(h). *See id.*

4

*Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (citing *City of Brownsville*, 897 S.W.2d at 753). Trial courts may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* TEX. R. EVID. 403. We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Malone*, 972 S.W.2d at 43. Even if a trial court errs by improperly disallowing evidence, reversal is warranted only if the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to this Court. *See* TEX. R. APP. P. 44.1.

Miller argues that the evidence regarding wholesale costs incurred by B-C was relevant and should have been admitted because it was probative as to whether the prices charged by B-C were reasonable. To support this argument, Miller points to the clause of the lease agreements stating that, if the equipment is returned to B-C in a damaged condition, the lessee shall be obligated to pay to B-C the "reasonable" cost of repairs. Miller also cites the Dallas Court of Appeals' opinion in *Anthony Equipment Corp. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191 (Tex. App.–Dallas 2003, pet. dism'd), for the proposition that the "actual," or wholesale, cost of repairs is the appropriate standard to use when calculating damages. In *Anthony Equipment*, as here, the plaintiff lessor sued the defendant lessee for negligence and breach of contract to recover costs of repairs to cranes leased by the defendant, as well as lost profits. The court held that:

> When personal property has been damaged, the general rule is that the damage is to be measured by the difference in the reasonable market value immediately before and immediately after the damage to such property. If damaged property can be repaired adequately and fully, the difference in value before and after the damage to the item can be defined as the cost of the repairs. When property has sustained damage that diminishes its fair market value, the cost of repairing or restoring the property to its full market value is an appropriate element of damage.

*Id.* at 206 (citations omitted). Miller claims that, under this precedent, the trial court should

5

have permitted the jury to see evidence of the wholesale costs of repairs because their task was to determine the "reasonable costs of repair."

The present case, however, is distinguishable from *Anthony Equipment* in that Miller contractually agreed to a specific method for calculating damages. Specifically, the lease agreements provided as follows: "LESSEE AGREES THAT ANY REPAIRS AND LABOR FURNISHED BY B-C EQUIPMENT SALES, INC., SHALL BE CHARGED TO AND PAID BY LESSEE *AT B-C EQUIPMENT SALES, INC., PRICES FOR SIMILAR REPAIRS, PARTS, OR ACCESSORIES, IN FORCE AT THE TIME SAME ARE SUPPLIED*" (emphasis added). The trial court, giving this provision its plain and ordinary meaning, *see J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003), found that Miller was contractually obligated to pay B-C's standard prices for repair parts, rather than wholesale prices for those parts. Moreover, to the extent that this provision conflicts with the prior provision stating that Miller would only be responsible for the "reasonable costs of repairs," this more specific provision controls. *See Ostrowski v. Ivanhoe Prop. Owners Improvement Ass'n*, 38 S.W.3d 248, 254 (Tex. App.–Texarkana 2001, pet. denied) ("The general rule is that when there is a conflict between two provisions, the specific provision controls over the general provision."). Thus, the trial court reasonably determined that any evidence of wholesale prices would either be irrelevant or substantially outweighed by the danger of unfair prejudice.[3] *See* TEX. R. EVID. 403.

Miller asserts in reply that the provision requiring it to pay for repairs at B-C's standard prices is akin to a liquidated damages clause and therefore must meet a reasonableness standard. *See Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 298 (Tex. 1997) (holding that a liquidated damages clause in a contract will not be enforceable unless it represents a reasonable estimate of anticipated damages upon breach of the contract). We disagree that the lease provision at issue here is akin to such a clause. A liquidated damages clause is designed to substitute a sum agreed

---

[3] It is also noteworthy that the trial court did permit Miller to present evidence, if any, that the amounts charged by B-C for the repairs to the cranes were in excess of the amount charged by B-C to other customers. However, Miller did not provide any such evidence.

6

upon by the parties for any actual damages suffered as a result of a breach. *BFG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 766 (Tex. 2005) (citing 24 SAMUEL WILLISTON & RICHARD A. LORD, WILLISTON ON CONTRACTS § 65:1, at 229 (4th ed. 2002)). Moreover, to be enforceable as liquidated damages, the damages must be uncertain. *Id.* (citing *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991)). Here, the provision at issue identified the anticipated damages with certainty—it consisted of the amount that B-C charges to any other customer "for similar repairs, parts, or accessories." Additionally, we note that the lease provision at issue did not anticipate a breach by Miller; rather, it merely set forth a standard by which prices for repairs would be set. Miller agreed to this standard, and the trial court was justified in not permitting Miller to claim at trial that the standard did not apply because it was unreasonable.

We conclude that there is a legitimate basis in the record supporting the trial court's refusal to admit evidence on the wholesale prices of parts. Therefore, the trial court did not abuse its discretion in declining to permit evidence of wholesale costs incurred by B-C in repairing the two cranes. *See Malone*, 972 S.W.2d at 43. Accordingly, Miller's first issue is overruled.

## B.    Errors in Jury Charge[4]

By its second issue, Miller asserts that "[t]he Court should have used the language in the contract and the jury charge should have instructed the jury that Plaintiff B-C

---

[4] Miller characterizes its second issue on appeal differently in different sections of its brief. In its "Issues Presented" section, Miller describes its second issue as: "Whether the trial court erred when it failed to submit a question to the jury and denied a new trial on the issue of whether B-C Equipment was entitled to only recover under the contract the 'reasonable costs of repairs.'" In the "Argument" section of its brief, Miller describes its second issue as follows: "The jury was improperly instructed with respect to damages."

We first note that, to the extent that Miller purports to challenge the trial court's refusal to grant its motion for new trial, as the first characterization of its second issue implies, Miller has not made any argument as to this issue and so there is nothing for us to review. *See* TEX. R. APP. P. 38.1.

Second, we note that though they appear similar, the two characterizations differ in that the first purports to challenge the trial court's exclusion of a proposed jury *question* while the second purports to challenge the court's exclusion of a proposed jury *instruction*. A trial court has greater discretion in submitting instructions and definitions to the jury than it does in submitting questions. *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex. App.–San Antonio 1998, pet. denied); *see Steak & Ale of Tex., Inc. v. Borneman*, 62 S.W.3d 898, 904 (Tex. App.–Fort Worth 2001, no pet.); *see also Hallmark v. Wetz*, No. 04-04-00430-CV, 2005 Tex. App. LEXIS 2559, at *5 (Tex. App.–San Antonio Apr. 6, 2005, no pet.) (mem. op.). Nevertheless, we need not address the different standards of review as Miller has failed to preserve either issue for appeal.

7

Equipment was entitled to recover the 'reasonable costs of repairs.'"

Texas Rule of Civil Procedure 277 requires the trial court to submit instructions and definitions to the jury as are necessary to enable the jury to render a verdict. TEX. R. CIV. P. 277. The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). Failure to submit a question is not deemed grounds for reversing the judgment unless its submission, in substantially correct wording, has been requested in writing by the party complaining of the judgment. TEX. R. CIV. P. 278. As long as the charge is legally correct, trial courts are afforded broad discretion, subject to reversal only on a court's abuse of that discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Hagins v. E-Z Mart Stores, Inc.*, 128 S.W.3d 383 , 387 (Tex. App.–Texarkana 2004, no pet.). Even if the trial court abused its discretion, we reverse only where the error in the jury charge is shown to be harmful. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749-50 (Tex. 1980). That is, a jury charge error is reversible only if it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. TEX. R. APP. P. 44.1(a).

Miller claims that the court's failure to instruct the jury that B-C was entitled only to recover the "reasonable costs of repair" was reversible error. B-C argues in response that (1) Miller failed to preserve the argument because it did not object to the jury questions pertaining to damages, and (2) even if Miller did preserve the argument, the exclusion of Miller's proposed jury question and instructions was not an abuse of discretion.[5] We agree that Miller failed to preserve the argument for appeal.

The record reflects that Miller submitted a proposed jury charge on March 10, 2006, and B-C submitted a proposed jury charge on March 13, 2006. Miller's proposed charge contained a proposed Question Number One which included the following instruction:

---

[5] B-C also argues, as it did with regard to Miller's first issue, that Miller waived this argument by failing to include citations to the record in the argument section of its brief. As noted above, however, the "Statement of Facts" section in Miller's brief does include appropriate citations to the record. We therefore find that Miller has not waived its second issue on this ground. *See* TEX. R. APP. P. 38.1(h).

It is your duty to interpret the following language of the agreement:

> "The equipment shall be returned in the same condition as when received, except for normal wear. IF THE EQUIPMENT, WHEN RETURNED TO LESSOR, IS IN NEED OF REPAIR, OR IS IN A DAMAGED AND WORN CONDITION (INCLUDING DAMAGE AND WEAR TO TIRES) NOT ATTRIBUTABLE TO NORMAL WEAR AND TEAR, LESSEE SHALL BE OBLIGATED TO PAY TO LESSOR THE REASONABLE COSTS OF THE REPAIRS AND, IN ADDITION, LESSEE SHALL BE OBLIGATED TO CONTINUE THE PAYMENT OF RENTAL. [sic] THE RATE HEREIN STATED, FOR THE PERIOD OF TIME REASONABLY NECESSARY TO REPAIR LESSOR'S EQUIPMENT AND TO RESTORE IT TO A GOOD, SAFE AND SERVICEABLE CONDITION."

After reviewing both parties' proposed charges, the trial court finalized its charge on April 9, 2006 and submitted it to counsel for both parties for their review. Question Number Five of the court's charge, which was to be answered by the jury only if it had found that Miller had failed to comply with the 100-ton crane lease agreement, read as follows:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate B-C Equipment Sales, Inc. for its damages, if any, that resulted from such failure to comply [with the 100-ton crane lease agreement]?
>
> Consider the following elements of damages, if any, and none other.
>
> 1) The cost to B-C Equipment Sales, Inc. to return the 100-ton Link-Belt crawler crane to the same condition it was in when received by I.E. Miller-Fowler Trucking, LLC, except normal wear and tear.
>
> 2) The loss of rental profits to B-C Equipment Sales, Inc. for the time reasonably necessary to return the crane to the same condition it was in when received by I.E. Miller-Fowler Trucking, LLC.

The next charge question was identical to Question Number Five except that it pertained to the 80-ton crane lease agreement.

On April 10, 2006, prior to closing argument at trial, the trial court asked counsel for both parties whether they objected to the court's charge. Under Texas Rule of Civil Procedure 274, a party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. TEX. R. CIV. P. 274. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading,

is waived unless specifically included in the objections. *Id.* At the April 10, 2006 hearing, Miller's counsel objected to: (1) the inclusion of "those Instructions in Questions 1, 2, 3, and 4 that discuss course of performance, course of dealing and usage of trade," and (2) the exclusion of an instruction stating that "any doubt as to the proper construction to be given to the equipment lease provisions must be resolved against" B-C. At no time did Miller's trial counsel express an objection to Question Number Five or Question Number Six, the only questions in the charge pertaining to the calculation of damages.[6]

Moreover, Miller's proposed charge instructed the jury to interpret an incomplete version of the lease provision at issue. Specifically, Miller's requested jury instruction omitted the following sentence from its recitation of the lease provision: "LESSEE AGREES THAT ANY REPAIRS AND LABOR FURNISHED BY B-C EQUIPMENT SALES, INC., SHALL BE CHARGED TO AND PAID BY LESSEE AT B-C EQUIPMENT SALES, INC., PRICES FOR SIMILAR REPAIRS, PARTS, OR ACCESSORIES, IN FORCE AT THE TIME SAME ARE SUPPLIED." Without this sentence, Miller's requested question was not substantially correct, and the trial court's refusal to include that question cannot form the basis of reversible error. *See* TEX. R. CIV. P. 278.

Miller did not object to the jury questions and instructions regarding the calculation of damages, nor did it submit a jury question in substantially correct wording that would have apprised the trial court of the error. Therefore, the trial court's error, if any, in instructing the jury in the manner that it did with regard to the calculation of damages has been waived. *See id.*; TEX. R. APP. P. 33.1(a); *see also Knox v. Taylor*, 992 S.W.2d 40, 65 (Tex. App.–Houston [14th Dist.] 1999, no pet.) ("Appellants may not raise a complaint on appeal which does not comport with its objection at trial."). Miller's second issue is overruled.

---

[6] To the extent that Miller now challenges (1) the trial court's inclusion of "those Instructions in Questions 1, 2, 3, and 4 that discuss course of performance, course of dealing and usage of trade," or (2) the trial court's exclusion of an instruction stating that "any doubt as to the proper construction to be given to the equipment lease provisions must be resolved against" B-C, Miller has waived those arguments because they were not raised on appeal. *See* TEX. R. APP. P. 38.1.

10

**C      Sufficiency of Evidence to Support Award of Damages for Costs of Repair**

By its third issue, Miller contends that the evidence adduced at trial was legally and factually insufficient to support the jury award of damages for cost of repair.[7]

A challenge to the legal sufficiency of evidence will be sustained only if:  (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).  More than a scintilla of evidence exists, and the evidence is legally sufficient, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence.  *Lee Lewis Constr. Co. v. Harrison*, 70 S.W.3d 778, 782-83 (Tex. 2001).  In conducting a factual sufficiency review, we view all the evidence in a neutral light to determine whether the contested finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias.  *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 749 (Tex. App.–Corpus Christi 2006, pet. denied).

Miller cites *Merchants Fast Motor Lines, Inc. v. State*, 917 S.W.2d 518, 523 (Tex. App.–Waco 1996, writ denied), for the proposition that "[to] recover for cost of repair, a plaintiff must present evidence to justify the jury's finding that the costs of repair were

---

[7] B-C contends that Miller waived its third issue because its "brief contains no argument supported by citations to authority and the record as to why the evidence is legally or factually insufficient."  Indeed, Miller's argument on its third issue consists merely of a summary of the applicable standard of review along with the following statement:

> B-C Equipment presented no evidence regarding the actual cost or reasonable cost of repair. Alternatively, there was factually insufficient evidence to support the jury award regarding the costs of repair to the subject cranes.  In support of this award, B-C Equipment offered only estimates or markups for the alleged costs to repair the subject cranes.  Such conclusory statements are not valid evidence of reasonable costs of repair.

Although this argument contains no citations to the record, we find, as noted above, that the citations to the record contained in the "Statement of Facts" section of Miller's brief are sufficient to allow this Court to conduct an effective review of the issues.  Additionally, we note that Miller did effectively summarize the applicable standard of review for legal and factual sufficiency challenges, citing appropriate authority.   Miller has not waived its third issue under rule 38.1(h).  *See* Tex. R. App. P. 38.1(h).

reasonable and necessary." Miller further asserts that B-C's trial evidence consisted only of "estimates or markups for the alleged costs," which Miller claims are "conclusory statements" and "not valid evidence of reasonable costs of repair." We disagree.

Again, *Merchants Fast Motor Lines* can be distinguished from the present case in that the parties there did not enter into any prior agreement as to the calculation of damages. Here, as we have stated in our discussion of Miller's first issue, the lease agreements provided a specific method for calculating Miller's liability in the event of damage to the cranes—that is, Miller would be responsible for paying B-C's standard prices "for similar repairs, parts, or accessories." B-C, therefore, had no burden at trial to show that the costs of repair were reasonable and necessary; it merely needed to establish its standard prices. B-C presented sufficient evidence as to its prices in the form of testimony by its employee Jerry Lopez, as well as documentary evidence giving details of the parts required to repair the cranes and the prices charged for them. Accordingly, we cannot say that there was insufficient evidence supporting the jury's award of damages. Moreover, the jury's finding is not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *See Jackson*, 116 S.W.3d at 761. Miller's third issue is overruled.

### D. B-C's Motion for Sanctions

B-C has moved for sanctions pursuant to Rule 45 of the Texas Rules of Appellate Procedure, which provides in relevant part that "[i]f the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages." TEX. R. APP. P. 45. B-C contends that "the brief filed by Miller and the record on appeal show that Miller did not preserve certain issues for appellate review, did not provide any citations to the record or cite any relevant authority to supports [sic] other issues, and did not present any argument to support its third issue for review." Although Miller was not successful in its appeal, we conclude, after reviewing the record and the briefs on file, that

12

the appeal was not frivolous.  Therefore, we decline to award damages under rule 45.

## III. Conclusion

The judgment of the trial court is affirmed.


_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 5th day of June, 2008.